THE HONORABLE JAMES L. ROBART

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
SEATTLE DIVISION

HDT Bio Corp.,

          Plaintiff,

    v.

Emcure Pharmaceuticals, Ltd.,

          Defendant.

Case No.:  2:22-cv-00334-JLR

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO STAY DISCOVERY PENDING THE OUTCOME OF ITS MOTION TO DISMISS PURSUANT TO RULES 12(B)(2) AND (6), OR, ALTERNATIVELY, TO DISMISS UNDER THE DOCTRINE OF FORUM *NON CONVENIENS*; OR, ALTERNATIVELY, TO STAY

NOTE ON MOTION CALENDAR: JUNE 3, 2022

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

**INTRODUCTION**

There is no reason to depart from the ordinary course of discovery prescribed by the Federal Rules of Civil Procedure. Like many other defendants, Emcure has moved to dismiss on various grounds, including personal jurisdiction and *forum non conveniens*. ECF No. 23 ("MTD") at 6–17. Like many other motions to dismiss, the MTD is meritless, remarkable only in its reliance on half-truths and false statements. Emcure's representations cannot be accepted at face value. When the Court takes a "preliminary peek," it will conclude that the MTD has little chance to succeed—and certainly not a sufficiently high chance to deviate from the normal requirements of the Rules.

Were jurisdiction genuinely in doubt, Emcure still could not carry its "heavy burden" to justify a stay. A stay would deprive HDT of discovery from Emcure in any forum for months, while allowing discovery to proceed would impose no unusual or "unnecessary" burdens. Emcure's conduct also weighs against a stay. Instead of seeking relief from this Court's deadlines, Emcure ignored them—leaving HDT no choice but to make unilateral initial disclosures and to write a "joint" status report itself. The Court should not reward Emcure's noncompliance (nor cement its ill-gotten procedural advantage) by staying discovery.

In short, this case is not the "exception to the rule" that a dispositive motion does not relieve the movant from discovery. The Court should deny the Motion (ECF No. 25).

**PROCEDURAL HISTORY**

On April 15, 2022, the Court entered its Order (ECF No. 22) setting deadlines for a Rule 26(f) conference, Rule 26(a) initial disclosures, and a joint status report. Emcure has flouted these deadlines. Although the Rule 26(a) deadline was May 13, 2022, Emcure still has not served initial disclosures. Berkowitz Decl. ¶ 3. Emcure also declined to state its substantive positions in the joint status report and discovery plan, baselessly asserting that doing so could compromise its

jurisdictional defense. Berkowitz Decl. ¶ 4; Joint Status Report and Discovery Plan, ECF No. 26, at 2.[1] HDT, by contrast, timely served initial disclosures and completed the "joint" report. Berkowitz Decl. ¶ 4. Rather than seek permission to postpone these deadlines (*see* LCR 7(j); LCR 7(d)(2)(a)), Emcure now asks for retroactive approval for ignoring them. On the Rule 26(a) due date, Emcure filed the MTD and this Motion instead. Berkowitz Decl. ¶ 3. The MTD claims that the Court lacks jurisdiction because Emcure had no Washington contacts, did not direct Gennova's contacts, and had no role in exploiting HDT's trade secrets. MTD at 8–14; Mot. at 4. By Emcure's account, it cannot develop or manufacture vaccines at all. MTD at 6; ECF No. 24 ("Mathur Decl.") ¶ 11. The MTD also urges the Court to dismiss in favor of an Indian forum. MTD at 14–17; Mot. at 4.

Emcure's Motion asks the Court to stay discovery based on Emcure's challenges to this forum (Mot. at 3–4), because HDT can allegedly obtain the discovery it needs from Gennova in a pending arbitration in London (*id.* 3–4), and because discovery will be costly (*id.* at 4–6).

## LEGAL STANDARDS

A party seeking a stay under Fed. R. Civ. P. 26(c) "carries the heavy burden of making a 'strong showing' why discovery should be denied." *Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D. Cal. 1990) (quoting *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)).

"The decision to relieve a party from the burdens of discovery while a dispositive motion is pending is the exception and not the rule." *Wilmington Trust Co. v. Boeing Co.*, Case No. C20-0402-RSM-MAT, 2020 WL 6060434 at *1 (W.D. Wash. Oct. 14, 2020) (internal quotation and citation omitted). In evaluating such a stay request, a court takes a "preliminary peek" at the merits

---

[1] "[P]articipation in discovery and attendance at a status conference [] is not the kind of affirmative action sufficient to establish personal jurisdiction." *Del Rio v. Ipeco Holdings, Ltd.*, No. C17-0690-JCC, 2018 WL 10741506 at *3 (W.D. Wash. Feb. 1, 2018).

of the allegedly dispositive motion, asking whether "on its face there appears to be an *immediate and clear possibility* that it will be granted." *GTE Wireless, Inc. v. Qualcomm, Inc.*, 192 F.R.D. 284, 286 (S.D. Cal. 2000) (emphasis in original). A court must be "*convinced* that the plaintiff will be unable to state a claim for relief." *Twin City Fire Ins. Co. v. Employers Ins. of Wausau*, 124 F.R.D. 652, 653 (D. Nev. 1989) (emphasis in original).

Even if it raises potentially valid grounds for relief, a "district court may *not* stay discovery when discovery is needed to litigate the dispositive motion." *Schrader v. Wynn Las Vegas, LLC*, No. 2:19-cv-021579-JCM-BNW, 2021 WL 4810324, at *3 (D. Nev. Oct. 14, 2021) (emphasis in original). Jurisdictional discovery is generally appropriate before granting a Rule 12(b)(2) motion. *See Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977) (discovery allowed unless "it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction"); *Boddy v. Pourciau*, Case No. C18-1046JLR, 2018 WL 4637380, at *8–*9 (W.D. Wash. Sept. 27, 2018) (denying 12(b)(2) motion without prejudice pending discovery).

## ARGUMENT

### I.  Defendant's Threshold Challenges Are Meritless.

Emcure cannot show a "clear and immediate possibility" that the MTD will be granted. *GTE Wireless*, 192 F.R.D. at 286. Far from it: a "preliminary peek" reveals that Emcure's conduct satisfies the standards for specific jurisdiction over nonresident tortfeasors, *infra* at 8–9, and that Washington is the best forum for this dispute, *infra* at 9–11. Emcure's counterarguments, and indeed the narrative of the entire MTD, are misleading. *Infra* at 3–8.

### A.  Defendant's Dispositive Motion Is Based on Demonstrable Falsehoods.

The facts alleged in the MTD are deceptive and inaccurate. The actual facts are more than sufficient to demonstrate the propriety of this forum.

1

### 1.   Defendant Misdirects the Court about Dr. Sanjay Singh.

2

3   The Complaint alleges that Emcure director Dr. Sanjay Singh had extensive contacts with

Washington that go to the heart of HDT's claims. *See generally* ECF No. 1 ("Compl.") ¶¶ 10, 14,

4

21, 47, 69, 85 (alleging in-person visits and countless contacts via email, telephone, messaging,

5

and Zoom over the course of years). In response, Emcure asserts in an innocuous "Background"

6

section of its MTD: "Dr. Singh is <u>not</u>: (1) an Emcure employee, (2) an Emcure officer, or (3) a

7

director on Emcure's board." MTD at 4 (emphasis in original). Emcure submits a declaration from

8

a marketing executive saying as much. Mathur Decl. ¶¶ 14–15. It then ignores Dr. Singh and his

9

Washington activities for the rest of its brief, hoping the Court will do likewise.

10   Emcure's assertions are classic misdirection. <u>First</u>, Defendant never disputes that Dr. Singh

11   is an independent director of Emcure. Compl. ¶¶ 10, 21, 44. Nor could it: Emcure's own website

12   identifies Dr. Singh as an "Independent Director of Our Company." Berkowitz Decl. ¶ 5. Although

13   independent directors are "independent" of management, they routinely act for and bind the

14   companies they serve.[2] The Complaint alleges that Dr. Singh did so here, including by engaging

15   intensively with Washington. *See* Compl. ¶¶ 10, 14, 21, 47, 69, 85. Emcure's representations about

16   Dr. Singh are thus irrelevant. Assuming that Dr. Singh is an independent director, then by definition

17   he cannot also be an employee or officer. *Cf.* MTD at 4; Mathur Decl. ¶¶ 14–15. And whether Dr.

18   Singh, in that role, also formally serves "on Emcure's board" has no legal significance.

19

20

21   _____

[2] Independent directors run companies, both in the United States and abroad. *See, e.g.*, Berkowitz Decl. ¶ 6 (Emcure

22   annual report disclosing that 46% of its directors are independent). If companies could escape liability by disavowing

the conduct of independent directors, then corporate liability would vanish. Of course, that is not how the law works.

23   As with other agents, the knowledge and conduct of independent directors is generally imputed to the businesses

they serve. *See, e.g.*, *In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 757 F.

Supp. 2d 260, 328 (S.D.N.Y. 2010) ("In general, the knowledge of fully-informed, disinterested and independent

24   directors will be attributed to the corporation.").

1

2

3

4

5

6

7

8

9

     Second, perhaps tellingly, Emcure conspicuously describes Dr. Singh's role in the present tense—he "*is* not an officer" (Mathur Decl. ¶ 14), "*is* not an agent" (*id.* ¶ 15), and "*has* no authority to bind or act" (*id.* ¶ 15) (emphasis added throughout). Emcure never asserts that Dr. Singh *was not* its officer at the relevant time, or that he *did not* have authority to act then. Emcure appreciates the distinction between "is" and "has never been," and makes it elsewhere.[3] Such careful drafting does not dispute that Dr. Singh *was* an Emcure employee or officer during the relevant period. Indeed, Emcure's latest annual report describes Dr. Singh as "Senior Management" and a linchpin of its R&D team. Berkowitz Decl. ¶ 6. When parsed, Emcure's claims do not contradict HDT's factual assertions.

10

11

12

13

14

15

16

     Emcure asserts other artful half-truths. For example, Emcure acknowledges "an ownership interest" in Gennova, implying that its stake is minor. *See* Mathur Decl. ¶ 12. In fact, its stake is 87.95%. Berkowitz Decl. ¶ 6. Similarly, Emcure insists that it does not sell "finished dose pharmaceutical products" in the United States, implying that it does no business in this country. Mathur Decl. ¶¶ 8–10. The phrase "finished dose" is a term of art for the subset of pharmaceutical products that are in final form for patients. Reed Decl. ¶ 2. Emcure does not dispute that 18% of its global sales are to the United States. Compl. ¶ 18; *see also* Berkowitz Decl. ¶ 6.

17

### 2. Defendant Misrepresents Conduct That It Cannot Deflect.

18

19

20

     Emcure also does not shy away from outright fabrication. For example, Emcure asserts that it "does not engage (and never has engaged) in vaccine development, vaccine manufacture or vaccine sales of any kind . . . ." Mathur Decl. ¶ 11. But as HDT has accurately alleged, Emcure's

21

22

23

24

---

[3] *See, e.g.*, Mathur Decl. ¶ 6 ("Emcure is not (and has never been) registered . . . ."); *id.* ¶ 10 ("Emcure is not (and has never been) licensed . . . ); *id.* ¶ 11 ("Emcure does not engage (and has never engaged) in any vaccine development . . . .").

official filing for an initial public offering of its stock says the exact opposite:

- "We are in the process of developing an mRNA COVID-19 vaccine."

- "Our standout achievement during the year has been the development of India's first indigenous mRNA based COVID-19 vaccine."

- "We are also in development stages for three other vaccines on our mRNA platform, for Zoster, Zika and Rabies."

Compl. ¶¶ 18, 83. If Emcure does not engage in vaccine development, then someone should notify investors immediately. Emcure should also tell its own executives, who have stated exactly the contrary to reporters and the public: "[Vikas] Thapar, the son-in-law of Satish Mehta, Founder and Chairman of Emcure . . . explained how building an indigenous mRNA vaccine comes with its own set of challenges." Berkowitz Decl. ¶ 7.

Other falsehoods are similarly egregious. For example, Emcure completely disavows "the infrastructure, technology or expertise to develop or manufacture a vaccine of any kind." Mathur Decl. ¶ 11. Again, it has told the public the exact opposite:

- "We source equipment from all over the world. . . . [we have] been lucky that a lot of the equipment was already there, and we are able to repurpose it."

- Emcure has the "inhouse expertise to tackle these challenges."

- "The fill and finish of mRNA vaccine is done at Emcure's sterile manufacturing facility." Berkowitz Decl. ¶ 7. Emcure also asserts that it "had no involvement in, nor did it assist Gennova in seeking regulatory approval to conduct clinical trials in India for a COVID-19 vaccine." Mathur Decl. ¶ 21. But Emcure does not dispute that an "***Emcure*** email address is the main contact listed on the initial clinical trial application for [the COVID-19 vaccine] HGCO19." Compl. ¶ 84 (emphasis in original). In fact, an Emcure address is the ***only*** contact listed. Berkowitz Decl. ¶ 8. Again, contrary to its assertions here, Emcure has repeatedly touted its involvement in clinical

trials: "We are progressing well with the vaccine trials and we hope to bring this vaccine to the patients and aid inoculation efforts around the globe." Compl. ¶ 83. *See also* Berkowitz Decl. ¶ 9.

The falsehoods listed so far are just the most shameless ones—those readily disproved by documentary evidence that is already public. Defendant's other claims are false, too:

| Defendant's Misrepresentation | Contrary Evidence (So Far) |
| --- | --- |
| Emcure "is neither involved in the day-to-day activities or management of Gennova nor does Emcure dictate how Gennova conducts its business." Mathur Decl. ¶ 13. | Dr. Steven Reed and Dr. Amit Khandhar of HDT declare under penalty of perjury that Dr. Singh and Gennova personnel told them that Emcure was overriding Gennova on important decisions relating to the License Agreement. Compl. ¶ 77; Reed Decl. ¶ 3; Khandhar Decl. ¶ 2 . Dr. Reed also declares that Emcure's CEO Satish Mehta was personally involved in managing the relationship between Gennova and HDT. Compl. ¶ 85; Reed Decl. ¶ 4. |
| Emcure did not "implement" or "perform" the License Agreement. Mathur Decl. ¶ 17. | Documents show that Emcure "implemented" and "performed" the License Agreement by seeking regulatory approval for HGCO19. Compl. ¶¶ 83, 84; Berkowitz Decl. ¶ 7. Dr. Khandar also declares that Emcure worked with HDT and vendors to secure the supplies needed to make HGCO19. Khandhar Decl. ¶ 4. |
| Emcure did not "terminate" the License Agreement. Mathur Decl. ¶ 17. | Dr. Reed declares that Dr. Singh told him that he would find a way to pay HDT royalties if Emcure forced Gennova to terminate or would not allow Gennova to pay. Reed Decl. ¶ 3. On other occasions, Dr. Singh said that he would resign if that happened. *Id.* Dr. Reed also declares that when Dr. Singh came to Seattle to announce that Gennova was terminating and refusing to pay royalties, he reiterated that he was taking these actions because Emcure was tying his hands. *Id.* Dr. Khandhar had a similar understanding based on his conversations with Gennova employee Swarnendu Kaviraj. Khandhar Decl. ¶ 3. |
| Emcure "was not responsible for and had no involvement in Gennova's delay in releasing the clinical data to HDT Bio Corp." Mathur Decl. ¶ 19. | Dr. Khandhar declares that Mr. Kaviraj told him that Emcure was making decisions overriding Gennova, including managing intellectual property and instructing Gennova personnel not to communicate with HDT personnel. Compl. ¶ 77; Khandhar Decl. ¶ 2. |

1    To be sure, Mr. Mathur's declaration on these points "contradicts" the Complaint, but only

2    with unsupported, conclusory assertions. He testifies in generalizations, offering no specific facts

3    inconsistent with HDT's claims, no documents in support, and no reason to believe that he even

4    has personal knowledge of the issues.[4] Even if his declaration created factual disputes, those

5    disputes would be resolved in HDT's favor. *River City Media, LLC v. Kromtech All. Corp.*, No.

6    2:17-cv-00105-SAB, 2017 WL 3710070 at *1 (E.D. Wash. Aug. 28, 2017).

7    In short, in deciding whether HDT's allegations are contradicted or not, the Court should

8    look carefully at Emcure's claims and give its "evidence" only the weight it deserves.

9    **B.    This Court Has Specific Jurisdiction Over Defendant.**

10    Stripped of the misrepresentations at its core, Emcure's jurisdictional argument is weak,

11    and surely fails to demonstrate the necessary "immediate and clear" likelihood of dismissal. As

12    HDT has alleged, Emcure purposefully directed its activities at Washington by (1) intentionally

13    misappropriating trade secrets (Compl. ¶¶ 78–93), (2) from HDT in Washington (*id.* ¶ 17),

14    (3) causing harm that Emcure knew would be suffered here (*id.* ¶¶ 46–48, 75, 85). Even if Emcure

15    acted from abroad, "physical presence is not a jurisdictional prerequisite"—and a foreign thief

16    "aims" its conduct at Washington when it acquires a resident's secrets from an authorized third

17    party and uses them to compete with the resident. *See, e.g.*, *Seattle Sperm Bank, LLC v. Cryobank*

18    *America, LLC*, No. C17-1487 RAJ, 2018 WL 3769803 at *2 (W.D. Wash. Aug. 9, 2018).[5]

19

20

21    [4] As far as HDT knows, Mr. Mathur was not personally involved in stealing HDT's secrets. Reed Decl. ¶ 5. It is interesting that Emcure relies on a declaration from a marketing executive (Mathur Decl. ¶ 2), and elects not to submit testimony from Mr. Mehta, Mr. Thapar, or Dr. Singh.

22    [5] *See also, e.g.*, *Mee Indus., Inc. v. Adamson*, No. 2:18-cv-003314-CAS (JCx), 2018 WL 6136813 at *4–*5 (C.D.

23    Cal. July 27, 2018); *Fluke Elecs. Corp. v. CorDEX Instruments, Inc.*, No. C12–2082-JLR, 2013 WL 566949 at *6 (W.D. Wash. Feb. 13, 2013); *Enertrode, Inc. v. Gen'l Capacitor Co. Ltd.*, Case No.16-cv-02458-HSG, 2016 WL 7475611 at *4 (N.D. Cal., Dec. 29, 2016); *MOD Super Fast Pizza, LLC v. Chang*, No. C12-1359 TSZ, 2012 WL

24    12882910 at *3 n.8 and text (W.D. Wash. Nov. 26, 2012).

HDT has also alleged that Emcure directed Gennova's Washington conduct, another basis for jurisdiction. Compl. ¶¶ 15, 77, 83–91; *see Daimler AG v. Bauman*, 134 S. Ct. 746, 759 (2014). Finally, HDT has alleged sufficient contacts with the U.S. to support jurisdiction under the federal long-arm statute. *See* Compl. ¶¶ 66, 69; Fed. R. Civ. P. 4(k)(2). Emcure has no good response:

First, Emcure falsely asserts that the Complaint and Mr. Mathur's declaration show that Emcure does not "have any jurisdictional contacts with the state of Washington." Mot. at 4. But Emcure ignores the litany of alleged contacts, including at least two in-person visits and countless calls, messages, emails, and teleconferences over nearly two years. *See supra* at 4, 7. There is more: for example, the biweekly Zoom meetings between the teams in Washington and India were conducted on ***Emcure's*** U.S.-based Zoom account. Compl. ¶ 69; Khandhar Decl. ¶ 5.

Second, Emcure falsely asserts that Dr. Singh's extensive Washington contacts matter only if they can be "imputed to Emcure through Gennova." Mot. at 4. But as explained above, Dr. Singh's contacts can be imputed to Emcure ***because Dr. Singh is a director of Emcure***. *See supra* at 4–5. A director's activities for a company in a forum are quintessential jurisdictional contacts. In any event, the Court may also exercise jurisdiction on the basis that Emcure directed Gennova's Washington conduct, as alleged in detail in the Complaint. *See, e.g., supra* at 7.

**C.     Washington Is The Best (And Only) Forum For This Dispute.**

Emcure also will not be able to overcome the "strong presumption" that HDT may litigate in its chosen, home forum. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255–56 (1981); *see also Philips Med. Sys. (Cleveland), Inc. v. Buan*, No. 19-CV-02648, 2021 WL 3187709 at *13 (N.D. Ill. July 28, 2021) (discussing weight due to U.S. plaintiffs' choice to litigate in domestic forum). India is not an adequate forum for trade secrets misappropriation cases that are not governed by contract, and even if it were, the balance of public and private interests strongly favors Washington.

1    According to Emcure, India is an adequate alternative because India "has consistently

2    upheld trade secret protection under common law and equity principles, such as breach of contract

3    and breach of confidence." MTD at 14–15.[6] Our government disagrees. This year, the United

4    States Trade Representative again put India on its "Priority Watch List," highlighting "insufficient

5    legal means to protect trade secrets in India." Berkowitz Decl. ¶ 10. The USTR expressly rejected

6    Emcure's argument that "breach of contract" protection suffices, noting that "this approach is

7    effective only in situations where the trade secret owner and party accused of misappropriation

8    have a contractual relationship." *Id.* As there is no contract between HDT and Emcure, Compl.

9    ¶ 84, there is no relief available to HDT in India—"no remedy at all." *See Tuazon v. R.J. Reynolds*

10   *Tobacco Co*., 433 F.3d 1163, 1178 (9th Cir. 2006). That alone requires denial.

11   Emcure next argues that the private and public factors favor dismissal because (1) evidence

12   and witnesses are in India (MTD at 15–16); (2) the Court and jury here may have to apply foreign

13   law (*id.* at 16); and (3) India has a stronger interest in the "alleged conspiracy between two Indian

14   companies to misappropriate trade secrets in India" (*id*. at 17). None of these claims holds water:

15   (1) evidence and witnesses are in **both** Washington and India; (2) the Court and jury have to apply

16   federal and Washington State trade secrets law, not foreign law;[7] and (3) according to U.S.

---

[6] Emcure also argues that India is an adequate forum because "[s]ervice could easily be effectuated under the procedures set forth in the Hague Convention, to which India is a signatory." MTD at 14. That is an overstatement at best. Numerous courts have recently considered alternative methods of service in India because service under the Hague Convention there is uncertain and drawn-out. *See, e.g.*, *In re Zantac (Ranitidine) Prod. Liab. Litig.*, No. 20-MD-2924, 2021 WL 1989928 at *2 (S.D. Fla. Apr. 1, 2021) (authorizing alternative service where Plaintiffs began Hague Convention process in India on September 14, 2020, had received no information from Central Authority as of April 1, 2021, and process agent "indicated that Plaintiffs should not expect service to be completed before the December 20, 2021 deadline for completion of fact discovery"); *Genus Lifesciences Inc. v. Tapaysa Eng'g Works Pvt. Ltd.*, No. 20-CV-3865, 2021 WL 915662 at *1 (E.D. Pa. Mar. 10, 2021) (authorizing alternative service where Plaintiff began Hague Convention process in India on August 20, 2020 and, despite follow-up, had received no response from Central Authority); *Amazon.com, Inc. v. Robojap Techs. LLC*, No. 2:20-cv-00694-MJP, 2021 WL 4893426 (W.D. Wash. Oct. 20, 2021) (denying authorization for alternative service in India; per case docket, service initiated on September 22, 2021 incomplete as of May 19, 2022).

[7] Even if the law governing the License Agreement somehow came into play, that law would be equally "foreign" to an Indian tribunal—it is the law of the U.K. Berkowitz Decl. ¶ 11.

officials, Washington is more interested in vindicating the intellectual property rights of American companies than India is. *See* Berkowitz Decl. ¶ 10. Indeed, a point of the Defend Trade Secrets Act is to provide American businesses like HDT a ready forum for disputes like this.[8] Moreover, Emcure ignores other factors that weigh against dismissal, such as HDT's residence, the burdens to HDT of trying this case in India, and this Court's familiarity with federal and Washington law.

In short, "A federal court rarely relinquishes its jurisdiction in favor of a foreign court." *Giorgi Global Holdings, Inc. v. Prasad*, 2022 WL 1017617, No. 20-1992, at *4 (E.D. Pa. Apr. 4, 2022) (citation omitted). This is not that "rare" case.

### D.    The MTD Cannot Be Decided in Defendant's Favor Without Discovery.

If the Court doubts whether HDT has made a *prima facie* case for jurisdiction, or is inclined to dismiss in favor of India, it should permit discovery into those issues. HDT has shown, at minimum, that discovery may uncover more facts that would support jurisdiction over Emcure, or that would show that India is inadequate or less suitable for this case. *See Wells Fargo*, 556 F.2d at 430 n.24; *Boddy*, 2018 WL 4637380, at *8–*9. In sum, either HDT will prevail outright on the MTD—and the Court should deny a stay—or "discovery is needed to litigate the dispositive motion"—and the Court should deny a stay. *Schrader*, 2021 WL 4810324 at *2.

### II.    **There Is No "Good Cause" To Stay Discovery.**

Emcure's other arguments do not meet its "'heavy burden' to make a 'strong showing' of why discovery should be denied." *Supra* at 2. Taking them in turn:

---

[8] *See Brand Energy & Infrastructure Servs., Inc. v. Irex Contracting Group*, No. 16-2499, 2017 WL 1105648 at *7 (E.D. Pa. Mar. 24, 2017) ("Congress intended the DTSA to apply in substantially the same way as the states' trade secrets laws, but with a much broader geographic and jurisdictional reach.") (cleaned up); H.R. Rep. No. 114-529, 2016 WL 1652144 at *200 (Apr. 26, 2016) ("As trade secret owners increasingly face threats from both at home and abroad, the bill equips them with the tools they need to effectively protect their intellectual property and ensures continued growth and innovation in the American economy.").

First, Emcure falsely claims that a stay will not prejudice HDT because HDT "is already engaging (or will soon be engaging) in discovery in the London Court of International Arbitration in its case against Gennova." Mot. at 4–5. That is untrue. Arbitrators have not even been appointed. Berkowitz Decl. ¶ 12. Once they are, there is no automatic mechanism for (or entitlement to) discovery under the LCIA Rules. Berkowitz Decl. ¶ 12. HDT will need to file a motion to get ***any*** discovery, let alone discovery from Emcure, which is not a party and will likely object. Berkowitz Decl. ¶ 12. To assert that discovery will happen "soon" in London is ill-informed.

Second, Emcure falsely claims that a stay will conserve resources because, if this Court dismisses, then "the sunk cost to every player involved will be substantial." Mot. at 5. But as Emcure observes, the issues here and in the arbitration overlap. *See* Mot. at 4–5. At worst, if the Court denies a stay but then dismisses the case, the parties will save time and energy in London. In any event, "a showing that discovery may involve some inconvenience and expense does not suffice to establish good cause for issuance of a protective order." *Twin City*, 124 F.R.D. at 653.

Third, to the extent that Emcure claims that discovery would be unusually burdensome, it fails to "show a particular and specific need for the protective order" as opposed to "broad or conclusory statements concerning the need for protection," which are insufficient. *Tradebay, LLC v. eBay, Inc.*, 278 F.R.D. 597, 601–02 (D. Nev. 2011). Emcure's only specific claim is a ***threat*** to refuse to produce relevant discovery from its subsidiary, which Emcure assures the Court will give rise to multiple costly disputes. *See* Mot. at 5. Emcure's apparent intention to make discovery as contentious, protracted, and resource-intensive as possible is not grounds for the relief it seeks.

**CONCLUSION**

For the foregoing reasons, the Court should deny the Motion.

1    DATED this 31st day of May, 2022.

2                                          STOKES LAWRENCE, P.S.

3                                          By:  */s/ Mathew Harrington*_____
                                                Mathew Harrington (WSBA #33276)
4                                               1420 Fifth Avenue, Suite 3000
                                                Seattle, WA 98101-2393
5                                               E-mail:  Mathew.harrington@stokeslaw.com

6                                          *Attorneys for Plaintiff HDT Bio Corp.*

7                                          STRIS & MAHER, LLP

8                                           By:  */s/ Dana Berkowitz*_____
                                                 Dana Berkowitz (SBN #303094)
9
                                           By:   */s/ John Stokes*_____
10                                               John Stokes (SBN #310847)

11                                         By:  */s/ Kenneth Halpern*_____
                                                Kenneth J. Halpern (SBN #187663)
12
                                            By:   */s/ Peter Stris*_____
13                                               Peter K. Stris (SBN #90017)

14                                              777 S. Figueroa St., Suite 3850
                                                Los Angeles, CA 90017
15                                              dberkowitz@stris.com
                                                jstokes@stris.com
16                                              jkhalpern@stris.com
                                                pstris@stris.com
17
                                           *Attorneys for Plaintiff HDT Bio Corp.*
18

19

20

21

22

23

24