1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10    HDT BIO CORP.,                          CASE NO. C22-0334JLR

11                            Plaintiff,       ORDER

12           v.

13    EMCURE PHARMACEUTICALS,
      LTD.,

14
                              Defendant.
15

16                        **I.    INTRODUCTION**

17           Before the court is Defendant Emcure Pharmaceuticals, Ltd.'s ("Emcure") motion

18    to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) and (6) and under the

      doctrine of forum non conveniens, or alternatively to stay.  (MTD (Dkt. # 23); Reply

19    (Dkt. # 45).)  Plaintiff HDT Bio Corp. ("HDT") opposes the motion. (Resp. (Dkt. # 41);

20    Surreply (Dkt. # 50).)  The court has considered the parties'

21    //

22

1    submissions, the relevant portions of the record, and the applicable law.  Being fully

2    advised,[1] the court DENIES Emcure's motion without prejudice to Emcure renewing the

3    motion upon completion of jurisdictional discovery.

4                        **II.    BACKGROUND**

5        This case arises from the alleged "theft of trade secrets" owned by HDT, a

6    Seattle-based biotechnology company, by Emcure, "one of India's largest manufacturers

7    and distributors of generic drugs."  (*See* Compl. (Dkt. # 1) ¶¶ 1-2, 5.)  As alleged, this

8    saga began when Dr. Sanjay Singh—the chief executive officer ("CEO") of an Emcure

9    subsidiary, Gennova Biopharmaceuticals Ltd. ("Gennova"), and, according to HDT, an

10   Emcure Director—"visited HDT's headquarters in Seattle in January 2020."  (*See id.*

11   ¶ 10.)  Dr. Singh met with HDT CEO, Dr. Steven Reed—a longtime colleague—and

12   "proposed a partnership to bring HDT's then-incipient COVID-19 vaccine to market in

13   India."  (*Id.*)  This proposed arrangement was subsequently formalized through an

14   Exclusive License Agreement ("License Agreement") between Gennova and HDT.  (*Id.*)

15   Pursuant to the terms of the License Agreement, Gennova received "a limited license to

16   use HDT's technology," consisting of its COVID-19 vaccine and delivery platform, "to

17   develop and sell a COVID-19 vaccine in India."  (*Id.* ¶¶ 6, 11.)  In return, "HDT would

18

19

20       [1] Neither party has properly requested oral argument (*see* MTD at 1; Resp. at 1), and the
     court has determined that oral argument would not be helpful to its disposition of the motion, *see*
21   Local Rules W.D. Wash. LCR 7(b)(4).  While Emcure requests oral argument in its reply (*see*
     Reply at 1), this district's local rules explicitly state that a "party desiring oral argument shall so
     indicate . . . in the caption of its motion or responsive memorandum," not in its reply brief, *see*
22   Local Rules W.D. Wash. 7(b)(4).

1   receive payments and royalties along with an unrestricted license to use Gennova's data

2   to develop and sell the vaccine everywhere else." (*Id.* ¶ 11.)

3       HDT then began "furnishing Gennova with" proprietary information and essential

4   materials, troubleshooting issues with sourcing raw materials, and providing ongoing

5   technical support that allowed Gennova to quickly obtain regulatory approval to begin

6   clinical trials. (*See id.* ¶¶ 65-69.)  To facilitate this collaboration, "HDT and Gennova

7   communicated by multiple means, including email and text message, but also weekly or

8   biweekly Zoom teleconferences attended by participants in both Seattle and India." (*Id.*

9   ¶ 69; *see also* 6/22/22 Khandhar Decl. (Dkt. # 43) ¶ 6, Ex. B (attaching Zoom invitation

10  showing that the meetings were hosted on Emcure's account).)  HDT was also able to

11  secure funding through the National Institute of Health ("NIH"), which "helped HDT

12  fund Gennova's" vaccine development efforts.  (*See* Compl. ¶ 69.)  Credit for early

13  successes were shared between the parties: "Emcure and Gennova consistently credited

14  HDT as (at a minimum) the developer of their vaccine and characterized the vaccine as

15  based on" HDT's proprietary technology.  (*See id.* ¶ 70.)  HDT's contributions were even

16  recognized through the name Gennova assigned to its vaccine, "HGC019," where the "H"

17  stood for "HDT."  (*Id.*)

18      Trouble soon began, however. Emcure and Gennova began delaying or "refusing

19  to share clinical data on the vaccine's safety and efficacy with HDT," an effort for which

20  HDT suspects Emcure was to blame.  (*See id.* ¶¶ 13, 77.)  Indeed, "Gennova personnel

21  repeatedly told Dr. Reed and HDT personnel that 'their hands were tied' by Emcure

22  regarding various important decisions, including the release of clinical data to HDT."

1    (*Id.*)  By the summer of 2021, "Emcure and Gennova began to take aggressive steps to

2    steal HDT's intellectual property and to claim it as their own," including by

3    "clandestinely fil[ing] two Indian patent applications that claim HDT's inventions."  (*Id.*

4    ¶¶ 78-79.)  Emcure also filed a prospectus "in preparation for" its initial public offering

5    of Emcure stock, in which it touted its successful development of an mRNA COVID-19

6    vaccine without mention of HDT.  (*Id.* ¶ 83.)  "The final nail in the coffin," as HDT puts

7    it, came when Dr. Singh visited Seattle in November 2021 to inform Dr. Reed of Emcure

8    and Gennova's intention to sell their vaccine "free and clear of HDT's intellectual

9    property rights."  (*Id.* ¶ 85.)  As soon as Dr. Singh delivered this news, Emcure's CEO

10   called Dr. Singh to speak with Dr. Reed in, according to HDT, a self-serving move born

11   of his "concern[] that a dispute with HDT could jeopardize Emcure's public offering."

12   (*Id.* ¶ 85.)  A short while later, "Gennova terminated the License Agreement," a move

13   HDT suspects Emcure ordered.  (*See id.*)

14          HDT now sues Gennova's parent company, Emcure, alleging that it

15   misappropriated HDT's trade secrets in violation of the Defense of Trade Secrets Act

16   ("DTSA"), 18 U.S.C. § 1836, and Washington Uniform Trade Secrets Act ("WUTSA"),

17   RCW 19.108.010 *et seq.*  (*See* Compl. ¶¶ 94-110.)  On May 13, 2020, Emcure moved to

18   dismiss the case, arguing that the court lacks personal jurisdiction over it; HDT has failed

19   to state a claim; and that dismissal is warranted under the doctrine of forum non

20   conveniens.  (*See generally* MTD at 6-19.[2])  Emcure alternatively requested that the court

21

22          [2] When citing to the parties' pleadings, the court uses the pleadings' internal pagination
     unless otherwise stated.

1    stay this case pending the resolution of the ongoing arbitration between HDT and

2    Gennova in the London Court of International Arbitration ("LCIA").  (*See generally id.*

3    at 20.)  A week later, on May 20, 2022, Emcure filed a motion asking the court to stay

4    discovery pending disposition of its motion to dismiss.  (*See generally* MTS (Dkt. # 25).)

5    On June 8, 2022, the court held a hearing on Emcure's motion to stay, which involved

6    issues related to the instant motion.  (*See* 6/8/22 Min. Entry (Dkt. # 36); 6/8/22 Hrg. Tr.

7    (Dkt. # 39).)  The court denied Emcure's stay motion on the record at the hearing and in a

8    written order entered on June 10, 2022.  (*See* 6/10/22 Order (Dkt. # 38); 6/8/22 Hrg. Tr.)

9                                  **III.    ANALYSIS**

10          The court begins by addressing HDT's request to strike several declarations that

11   Emcure submitted in support of its motion.  The court then considers Emcure's

12   arguments in favor of dismissal for lack of personal jurisdiction, as this issue may be

13   dispositive of Emcure's entire motion.

14   **A.    HDT's Surreply Requesting to Strike Certain Material**

15          As an initial matter, HDT filed a surreply asking the court to strike the three

16   declarations that Emcure submitted in support of its reply brief (*see* 7/6/22 Mathur Decl.

17   (Dkt. # 48); Singh Decl. (Dkt. # 47); 7/6/22 Iannucci Decl. (Dkt. # 46)), as well as the

18   portions of Emcure's reply brief that rely on the declarations or reiterate the statements or

19   arguments contained therein.  (*See* Surreply at 1 (asking the court to strike "page 1 lines

20   8-19; page 2 lines 1-11, 14; page 4 lines 3-11; and page 7 lines 6-12" of Emcure's reply

21   brief).)  HDT argues that the declarations, and the corresponding portions of Emcure's

22   reply brief, should be stricken because:  (1) the declarations improperly "introduce[] new

1    evidence and raise new arguments on reply"; and (2) the declarations are defective, in

2    whole or in part, under the Federal Rules of Evidence.  (*See id.* at 1-3.)  The court

3    addresses each argument in turn.

4        1.    Whether the Declarations Introduce New Information on Reply

5        "[I]n the Ninth Circuit new issues and evidence may not be raised in reply briefs."

6    *Atigeo LLC v. Offshore Ltd., D.*, No. C13-1694JLR, 2014 WL 239096, at *8 (W.D.

7    Wash. Jan. 22, 2014) (citing *Bazuaye v. I.N.S.*, 79 F.3d 118, 120 (9th Cir. 1996) ("Issues

8    raised for the first time in the reply brief are waived.")).  Thus, when new evidence or

9    issues are raised on reply, courts have discretion to either strike the reply declarations and

10   portions of the reply brief that present new material or consider the new material after

11   affording the nonmoving party an opportunity to respond.  *See id.* (first citing *Tovar v.*

12   *USPS*, 3 F.3d 1271, 1273 (9th Cir. 1993); and then citing *Nautilus Grp., Inc. v. Icon*

13   *Health & Fitness, Inc.*, 308 F. Supp. 2d 1208, 1214 (W.D. Wash. 2003)) (striking as new

14   legal arguments and supporting evidence raised in the defendants' reply brief that had not

15   been addressed in the defendants' motion where the defendants provided no reason why

16   the arguments could not have been raised earlier); *United States v. Venture One Mortg.*

17   *Corp.*, No. 13-CV-1872 W (JLB), 2015 WL 12532139, at *2 (S.D. Cal. Feb. 26, 2015)

18   (declining to strike new arguments and evidence raised in the defendant's reply papers

19   but allowing the plaintiff an opportunity to file a surreply addressing the new material).

20       Evidence is not "new," however, if it is submitted in direct response to evidence or

21   arguments raised in the opposition.  *See, e.g.*, *Terrell v. Contra Costa Cnty.*, 232 F. App'x

22   626, 629 n.2 (9th Cir. 2007) (concluding that reply evidence is not new where "[t]he

1  Reply Brief addressed the same set of facts supplied in Terrell's opposition to the motion

2  but provides the full context to Terrell's selected recitation of the facts"); *Hendon v.*

3  *Baroya*, No. 1:05-CV-01247-SAB-PC, 2016 WL 758663, at *2 (E.D. Cal. Feb. 25, 2016)

4  (concluding that the reply evidence and arguments were not new because they were

5  central to the argument raised in the defendants' motion and rebutted the evidence and

6  arguments that the plaintiff offered in his opposition).[3]

7        The court cannot agree with HDT's contention that every paragraph of the three

8  reply declarations constitute "new evidence" or opinions not directly responsive to the

9  arguments in HDT's opposition.  (*See generally* Surreply at 1-2.)  Many of the statements

10 in Mr. Mathur and Dr. Singh's declarations directly respond to the issues and evidence

11 that HDT submitted in response to Emcure's motion to dismiss.  For example, Mr.

12 Mathur's declaration asserts that Dr. Singh has never appeared in an Emcure corporate

13 filing, including Emcure's Draft Red Herring Prospectus ("DRHP"), as an employee,

14 director, or officer of Emcure and attaches another excerpt of Emcure's draft red herring

15 prospectus.  (7/6/22 Mathur Decl. ¶¶ 5-7.)  Mr. Mathur's assertions respond to HDT's

16 arguments and evidence with respect to whether Dr. Singh's contacts can be imputed to

17 Emcure for the purpose of establishing personal jurisdiction.  (*See, e.g.*, Resp. at 5-8.)

18

19        [3] *See also Edwards v. Toys "R" Us*, 527 F. Supp. 2d 1197, 1205 n.31 (C.D. Cal. 2007)
   ("Rather than offering new facts, the declarations to which plaintiffs object offer a
20 characterization of the telephone conversation between Lee and Testino and Walton that is
   different than that plaintiffs offered in their opposition."); *Liberty Mut. Fire Ins. Co. v. City of*
21 *Seattle*, No. C15-1039JCC, 2016 WL 5792691, at *1 n.1, 2 n.2 (W.D. Wash. Oct. 4, 2016)
   (denying the plaintiff's request to strike arguments and "new evidence" on grounds that there
22 was no prejudice to the plaintiffs in considering either the evidence or the argument because they
   were responsive to the arguments in the plaintiff's opposition).

Dr. Singh's declaration makes factual assertions about: (1) his role at Gennova (Singh

Decl. ¶¶ 3-6, 14); (2) his role at Emcure (*id.* ¶¶ 7-10); his travel (*id.* ¶¶ 13, 15);

(3) Emcure's website (*id.* ¶¶ 11-12); (4) the negotiation, performance, and termination of

the License Agreement (*id.* ¶¶ 16-23); and (5) Emcure's alleged role in breaching the

Agreement (*id.* ¶¶ 24-26). These assertions, with the exception of the Indian law

statements discussed below, respond to HDT's arguments and evidence with respect to

the issues of whether Dr. Singh and Gennova's contacts can be imputed to Emcure for the

purpose of establishing personal jurisdiction and whether Emcure itself has sufficient

jurisdictional contacts with Washington and the United States.[4]  (*See, e.g.*, Resp. at 5-15.)

Accordingly, the court declines to strike Mr. Mathur and Dr. Singh's reply declarations in

their entirety on the basis that they improperly introduce new evidence and raise new

arguments on reply.

　　　The court does, however, agree that certain statements in Dr. Singh and Mr.

Iannucci's reply declarations regarding Indian law, as well as the corresponding portions

of Emcure's reply brief, should be stricken because they improperly introduce new

---

[4] Paragraphs 10 and 11 of Mr. Iannucci's July 6, 2022 declaration state that Mr. Iannucci reviewed HDT's requests for production and that 25 of those 56 document requests "seek information directly from Gennova." (7/6/22 Iannucci Decl. ¶¶ 10-11.)  Although HDT does not allege that those two paragraphs improperly present new issues or evidence on reply (*see generally* Surreply at 2), the court has reviewed those paragraphs and independently concludes that they do not present new issues or evidence.  The assertions in paragraphs 10 and 11 respond to HDT's arguments with respect to Emcure's request to stay this case pending the outcome of the arbitration between HDT and Gennova.  (*See generally* Resp. at 22-24; Reply at 9-11.)  Accordingly, the court declines to strike paragraphs 10 and 11 of Mr. Iannucci's July 6, 2022 declaration on the basis that they improperly raise new issues or evidence on reply.  Additionally, the court declines to strike these paragraphs for any evidentiary reasons because HDT did not challenge these paragraphs as defective under the Federal Rules of Evidence.  (*See* Surreply at 2-3.)

evidence or issues on reply.  Specifically, paragraphs 6 and 9 in Dr. Singh's declaration and paragraphs 2 through 9 in Mr. Iannucci's July 6, 2022 declaration contain assertions regarding the meaning of Indian law and its application to Dr. Singh and Emcure.  (*See generally* Singh Decl. ¶¶ 6, 9; 7/6/22 Iannucci Decl. ¶¶ 2-9.[5])  Emcure uses these assertions to make new arguments that it could have raised its opening brief regarding the interpretation and application of foreign law.[6]  (*See* Reply at 1:17-19; 2:1-11.) Accordingly, the court strikes the above-mentioned paragraphs (*see* Singh Decl. ¶¶ 6, 9; 7/6/22 Iannucci Decl. ¶¶ 2-9) to the extent they contain or support the new arguments about the meaning of Indian law and the application of Indian law to Emcure and Dr. Singh, which the court declines to consider.  The court similarly strikes the corresponding portions of Emcure's reply brief to the extent that they rely on the stricken paragraphs or make arguments about the meaning of Indian law and the application of Indian law to Emcure and Dr. Singh.  (*See* Reply at 1:17-19; 2:1-11.)

     2.  <u>Whether the Reply Declarations are Defective Under the Federal Rules of Evidence</u>

     Having declined to strike the declarations in their entirety on the basis that they improperly introduce new evidence and issues on reply, the court now turns to consider

//

---

[5] To the extent that portions of this paragraph could be read as not making new arguments regarding the meaning of Indian law or the application of Indian law to Emcure, the court still strikes the paragraph because Mr. Iannucci has not established the basis of his personal knowledge of Emcure's intent in drafting its DRHP under Federal Rule of Evidence 602.

[6] The court also notes that Emcure did not provide notice of its intent "to raise an issue about a country's foreign law."  *See* Fed. R. Civ. P. 44.1.

1  HDT's evidentiary objections with respect to certain statements in Dr. Singh and Mr.

2  Mathur's declarations.[7]

3          *a.  Dr. Singh's Declaration*

4          HDT argues that certain portions of Dr. Singh's declaration should be stricken

5  under Federal Rules of Evidence 602.[8]  (Surreply at 3.)  Federal Rule of Evidence 602

6  allows a witness to testify to a matter only if "evidence is introduced sufficient to support

7  a finding that the witness has personal knowledge of the matter."  Fed. R. Evid. 602.

8  Personal knowledge may be inferred from the declaration itself based on the declarant's

9  role and participation in the matters declared.  *See Barthelemy v. Air Lines Pilots Ass'n*,

10  897 F.2d 999, 1018 (9th Cir. 1990); *Strong v. Valdez Fine Foods*, 724 F.3d 1042, 1045

11  (9th Cir. 2013).  However, personal knowledge "is not strictly limited to activities in

12  which the declarant has personally participated" because "personal knowledge can come

13  from review of the contents of files and records."  *Wash. Cent. R.R. Co., Inc. v. Nat'l*

14  *Mediation Bd.*, 830 F. Supp. 1343, 1353 (E.D. Wash. 1993) (finding personal knowledge

15  sufficient when the declarant was the official records custodian).

16          First, HDT asks the court to strike paragraph 11 of Dr. Singh's declaration

17  (Surreply at 3), which states:

18          I was provided the Declaration of Dana Berkowitz by Blank Rome LLP.  The
            declaration identifies me as an "independent director" of Emcure based on
19

20          [7] Because the court has stricken the paragraphs of Mr. Iannucci's declaration that HDT
    challenged under the Federal Rules of Evidence (*see* Surreply at 2-3), the court does not address
21  the remaining paragraphs of his declaration in this section.

22          [8] Having stricken Dr. Singh's statements regarding Indian law, the court does not address
    HDT's evidentiary objections as to those statements.  (*See* Surreply at 3.)

1
2

> being identified as such on Emcure's website under "Senior Management"
> with the statement "Independent Director of Our Company."  That was an
> inadvertent error on the website, as I am not, and have never been, an
> independent director of Emcure.

3
4

(Singh Decl. ¶ 11.)  HDT argues that Emcure has not established Dr. Singh's personal

5

knowledge that the statement on Emcure's website that he is an 'Independent Director of

6

Our Company' was 'an inadvertent error.'"  (Surreply at 3.)  The court agrees that

7

Emcure has not established how Dr. Singh knows that the alleged error was "an

8

inadvertent" one.  Dr. Singh can testify to the fact that he was not an independent director

9

of Emcure and that the statement describing him as such on Emcure's website was thus

10

an error.  However, he cannot opine on the type of error that Emcure made in including

11

such a statement on their website, as he did not create the statement and his declaration is

12

devoid of facts that would establish his personal knowledge of the fact that the error was

13

inadvertent.

14

Second, HDT asks the court to strike paragraph 21 of Dr. Singh's declaration

15

(Surreply at 3), which provides as follows:

16
17
18
19
20

> In Dr. Reed's declaration he refers to a call from Satish Mehta to me, in
> which he spoke to Mr. Mehta.  Dr. Reed has completely mischaracterized
> this phone call.  After meeting in Seattle, in which we discussed proposed
> changes to the structure of HDT/Gennova License Agreement, I went to
> dinner with Dr. Reed and Darrick Carter.  While at dinner, Mr. Mehta called
> my cell phone.  Mr. Mehta did not know that I was with Dr. Reed when he
> called, but I informed him I was out to dinner with both Dr. Reed and Dr.
> Carter.  As Dr. Reed and Mr. Mehta have known each other for more than a
> decade, and Dr. Reed often visits with Mr. Mehta when he is in Pune, India,
> I handed my cell phone to Dr. Reed to say hello to Mr. Mehta and the two
> spoke for less than one minute, exchanging pleasantries.

21
22

//

1    (Singh Decl. ¶ 21.)  HDT contends that Emcure has not "shown Dr. Singh's knowledge

2    of Dr. Satish Mehta's state of mind or that he overheard what Dr. Mehta said to Dr.

3    Steven Reed on the phone."  (Surreply at 3.)  Based on the information in the declaration,

4    court agrees that Dr. Singh cannot testify that "Mr. Mehta did not know that I was with

5    Dr. Reed when he called" because Emcure has not established his personal knowledge of

6    Mr. Mehta's state of mind.  For example, Dr. Singh does not say that Mr. Mehta acted

7    surprised when Dr. Singh told Mr. Mehta that he was at dinner with Dr. Reed and Dr.

8    Carter.  A statement to this effect would lend support to the proposition that Mr. Mehta

9    did not know Dr. Singh was with Dr. Reed when he called.  Additionally, while the court

10   declines to strike the "exchanging pleasantries" statement in its entirety, as Dr. Singh's

11   perception that the conversation involved pleasantries would be within his personal

12   knowledge, Dr. Singh cannot testify that the conversation involved *only* pleasantries for

13   the simple fact that he cannot say what happened on the other end of the line.  In sum, the

14   court strikes:  (1) Dr. Singh's assertion that the statement on Emcure's website that he is

15   an "Independent Director of Our Company" was "an inadvertent error" (Singh Decl.

16   ¶ 11); and (2) Dr. Singh's assertions that "Mr. Mehta did not know that I was with Dr.

17   Reed when he called" and that Dr. Reed and Mr. Mehta "exchang[ed] pleasantries"

18   during their phone call, to the extent such a statement could be read as alleging that the

19   conversation involved *only* pleasantries (*id.* ¶ 21).  The court similarly strikes the

20   corresponding portions of Emcure's reply brief (*see* Reply at 1:15, 4:5-6, 4:9) to the

21   extent that they rely on those stricken paragraphs or make the same assertions.

22   *//*

ORDER - 12

1          *b.  Mr. Mathur's 7/6/22 Declaration*

2          HDT argues that Mr. Mathur's July 6, 2022 declaration should be stricken under

3   Federal Rule of Evidence 602 "because it is based at least in part on unspecified

4   "information provided to" him by unspecified Emcure personnel and his review of

5   unspecified "books and records."  (Surreply at 3 (citing 7/6/22 Mathur Decl. ¶¶ 5-7).)

6   The court disagrees.  Rule 602 requires a witness to have personal knowledge of the

7   matter they testify to.  Fed. R. Evid. 602.  As noted above, however, "personal knowledge

8   can come from review of the contents of files and records."  *Wash. Cent. R.R.*, 830 F.

9   Supp. at 1353.  Thus, a witness who has reviewed records "may testify to acts that she or

10  he did not personally observe but which are described in the record."  *Id.*  A declarant

11  need not support every factual statement with independent documentation, but a court

12  need not give "much weight" to unsupported factual statements.  *See State Farm Mut.*

13  *Auto. Ins. Co. v. Frounfelter*, No. C16-5242BHS, 2017 WL 1048291, at *3 (W.D. Wash.

14  Mar. 20, 2017) (citing *Wash. Cent. R.R.*, 830 F. Supp. at 1355).

15         The paragraphs of Mr. Mathur's July 6, 2022 declaration that HDT takes issue

16  with, which are essentially the only substantive paragraphs contained therein, involve

17  assertions regarding Dr. Singh's employment status at Emcure.  (*See* Surreply at 3 (citing

18  7/6/22 Mathur Decl. ¶¶ 5-7).)  Mr. Mathur's statements that Dr. Singh has never been a

19  director, officer, or employee of Emcure are based on his review of Emcure's corporate

20  filings and the management section of Emcure's DRHP.  (*See* 7/6/22 Mathur Decl.

21  ¶¶ 4-7.)  Mr. Mathur's review of such records is sufficient to establish his personal

22  knowledge of Dr. Singh's employment status at Emcure.  *See Wash. Cent. R.R.*, 830 F.

1    Supp. at 1353.  Accordingly, the court declines to strike Mr. Mathur's July 6, 2022

2    declaration under Rule 602.  However, because Mr. Mathur did not attach as exhibits any

3    of the "corporate filings" on which he based his statements, aside from Emcure's DRHP

4    (*see generally* 7/6/22 Mathur Decl. ¶¶ 4-7), the court need not give "much weight" to his

5    unsupported factual statements, *see Frounfelter*, 2017 WL 1048291, at *3.

6          In a footnote, HDT also asks the court to strike Mr. Mathur's May 13, 2022 and

7    June 3, 2022 declarations[9] under Rule 602 because they do not "contain[] the required

8    foundational basis of his alleged personal knowledge of the facts therein or offer[] any

9    documents or facts to corroborate his general denials of HDT's allegations."  (*See* Resp.

10   at 6-7 n.5 (first citing 5/13/22 Mathur Decl. (Dkt. # 24); and then citing 6/3/22 Mathur

11   Decl. (Dkt. # 35)).)  Its request, however, lacks particularized arguments directed at the

12   substantive content in the declarations.  (*See id.* (making no arguments as to specific

13   paragraphs of the declaration).[10])  Absent further detail, the court declines to strike Mr.

14   Mathur's May 13, 2022 and June 3, 2022 declarations under Rule 602.  The court does,

15   however, agree with HDT's statement that it "need not give 'much weight' to [the

16   declarations'] unsupported factual statements."  (*See id.* (quoting *Barrowman v. Wright*

17   //

18

19         [9] Mr. Mathur submitted the May 13, 2022 declaration with Emcure's motion to dismiss
     and the June 3, 2022 declaration with Emcure's motion to stay discovery.  (*See generally* Dkt.)

20

21         [10] HDT merely states that "Mr. Mathur is a marketing executive, not one of the Emcure
     personnel who interacted with HDT, or who has spoken publicly about Emcure's vaccine
     platform," and that his declaration is based at least in part on unspecified "information provided
     to" him by unspecified Emcure personnel and his review of unspecified "books and records."

22   (*See* Resp. at 6-7 n.5 (citations omitted).)

1  *Med. Tech. Inc.*, No. C15-0717JLR, 2017 WL 4161688, at \*2 (W.D. Wash. Sept. 19,

2  2017)).)

3  **B.    Dismissal Pursuant to Rule 12(b)(2)**

4      The court sets forth the legal standards that apply to its consideration of Emcure's

5  motion to dismiss pursuant to Rule 12(b)(2) before turning to consider the parties'

6  arguments with respect to whether the court has personal jurisdiction over Emcure.

7      1.  Legal Standards

8      Federal Rule of Civil Procedure 12(b)(2) provides that "[a] defendant may move,

9  prior to trial, to dismiss the complaint for lack of personal jurisdiction." *Data Disc, Inc.*

10  *v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977) (citing Fed. R. Civ. P.

11  12(b)(2)). "Where a defendant moves to dismiss a complaint for lack of personal

12  jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is

13  appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir.

14  2004). Where the district court does not hold an evidentiary hearing and instead relies

15  solely on affidavits and discovery materials, the plaintiff need only make a prima facie

16  showing of jurisdictional facts. *See id.*; *Am. Tel. & Tel. Co. v. Compagnie Bruxelles*

17  *Lambert*, 94 F.3d 586, 588 (9th Cir. 1996). A prima facie showing means that the

18  plaintiff has produced admissible evidence, which, if believed, is sufficient to establish

19  the existence of personal jurisdiction. *See Ballard v. Savage*, 65 F.3d 1495, 1498 (9th

20  Cir. 1995); *see also Burri L. PA v. Skurla*, 35 F.4th 1207, 1213 (9th Cir. 2022) ("In

21  determining whether the plaintiff has met that burden, a court must accept as true all

22  uncontroverted allegations in the plaintiff's complaint and must resolve all disputed facts

1   in favor of the plaintiff.").  "Conflicts between parties over statements contained in

2   affidavits must be resolved in the plaintiff's favor."  *Schwarzenegger*, 374 F.3d at 800.

3   "The general rule is that personal jurisdiction over a defendant is proper if it is

4   permitted by a long-arm statute and if the exercise of that jurisdiction does not violate

5   federal due process."  *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006).

6   Here, both the Washington long-arm statute,[11] RCW 4.28.185, and Rule 4(k)(2)[12]—

7   "what is often referred to as the federal long-arm statute"—require compliance with due

8   process requirements.  *See Caddy*, 453 F.3d at 1155; *Shute v. Carnival Cruise Lines*, 783

9   P.2d 78, 78 (Wash. 1989) (stating that Washington's long-arm statute "extends

10  jurisdiction to the limit of federal due process").  Consequently, under both long-arm

11  statutes, the court need only examine whether the exercise of jurisdiction comports with

12  federal due process requirements.  *See Caddy*, 453 F.3d at 1155; *Chan v. Soc'y*

13  *Expeditions, Inc.*, 39 F.3d 1398, 1405 (9th Cir. 1994).  The due process clause grants the

14  court personal jurisdiction over defendants who have "certain minimum contacts [with

15

16  [11] In deciding whether personal jurisdiction exists, the court applies the law of the state in which it sits.  *See Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1484 (9th Cir. 1993).

17  [12] HDT contends that the court may look to Emcure's contacts with the entire United
18  States pursuant to the federal long-arm statute if Emcure's contacts with Washington are
    insufficient to warrant jurisdiction.  (*See* Resp. at 5 n.4.)  The exercise of Rule 4(k)(2) as a
    federal long-arm statute requires the plaintiff to prove three factors.  *Glencore Grain Rotterdam*
19  *B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1126 (9th Cir. 2002).  First, the claim
    against the defendant must arise under federal law.  *Id.*  Second, the defendant must not be
20  subject to the personal jurisdiction of any state court of general jurisdiction.  *Id.*  Third, the
    federal court's exercise of personal jurisdiction must comport with due process.  *Id.*  The due
21  process analysis is identical to the three part test discussed below, except the relevant forum is
    the entire United States.  *See Wanachek Mink Ranch v. Alaska Brokerage Int'l, Inc.*, No.
    C06-0089RSM, 2009 WL 1247039, at *4 (W.D. Wash. May 4, 2009); *AMA Multimedia, LLC v.*
22  *Wanat*, 970 F.3d 1201, 1208 (9th Cir. 2020).

ORDER - 16

1    the forum state] such that maintenance of the suit does not offend 'traditional notions of

2    fair play and substantial justice.'"  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316

3    (1945).

4         In the Ninth Circuit, courts conduct a three-part inquiry to determine whether a

5    non-resident defendant has such "minimum contacts" with the forum to warrant the

6    court's exercise of specific jurisdiction:[13]

7         (1) The non-resident defendant must purposefully direct his activities or
         consummate some transaction with the forum or resident thereof; or perform

8         some act by which he purposefully avails himself of the privilege of
         conducting activities in the forum, thereby invoking the benefits and

9         protections of its laws; (2) the claim must be one which arises out of or relates
         to the defendant's forum-related activities; and (3) the exercise of jurisdiction

10        must comport with fair play and substantial justice, i.e. it must be reasonable.

11   *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1227-28 (9th Cir. 2011)

12   (citations omitted) (emphasis omitted); *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874

13   F.3d 1064, 1068 (9th Cir. 2017) ("The inquiry . . . 'focuses on the relationship among the

14   defendant, the forum, and the litigation.'"  (quoting *Walden v. Fiore*, 571 U.S. 277, 284

15   (2014))).  If the plaintiff satisfies the first two steps, the burden shifts to the defendant to

16   set forth a "'compelling case' that the exercise of jurisdiction would not be reasonable."

17   *Mavrix Photo*, 647 F.3d at 1228 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462,

18   476-78 (1985)).

19

20

21

22   ───────────────
     [13] Because HDT does not assert that Emcure is subject to general jurisdiction (*see* Resp.
     at 5 n.4), the court will only consider whether Emcure is subject to specific jurisdiction.

ORDER - 17

1          2.  <u>Analysis</u>

2          HDT argues that the court can exercise personal jurisdiction over Emcure under

3    any of the following three theories:  (1) Gennova's minimum contacts with Washington

4    can be imputed to Emcure; (2) Dr. Singh's minimum contacts with Washington can be

5    imputed to Emcure; and (3) independent of any imputation, Emcure itself made minimum

6    contacts with Washington and the United States.  (*See generally* Resp. at 5-15.)  Emcure

7    disagrees.  (*See generally* MTD at 6-14; Reply at 1-9.)

8          With respect to HDT's first two arguments, Emcure appears to concede that

9    Gennova and Dr. Singh have sufficient case-related, minimum contacts with Washington

10   such that the court could exercise personal jurisdiction over them.  (*See* 6/8/22 Hrg. Tr. at

11   8:18-9:12; *see also* MTD at 6, 11-14 (declining to dispute the existence of minimum

12   contacts between Dr. Singh and Washington and Gennova and Washington); Reply at 1-7

13   (same).)  Accordingly, the parties' dispute turns on whether Gennova and/or Dr. Singh's

14   jurisdictional contacts can be imputed to Emcure under an agency theory.[14]  "While

15   [*Daimler AG v. Bauman*, 571 U.S. 117 (2014)] recognized the possibility that an agency

16   theory could be used to establish specific jurisdiction, the Ninth Circuit has not

17   enunciated what standard to apply after *Daimler*."  *Iconlab Inc. v. Valeant Pharm. Int'l,*

18   *Inc.*, No. 8:16-cv-01321-JLS-KES, 2017 WL 7240856, at *5 (C.D. Cal. Apr. 25, 2017)

19   (citing *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1024 (9th Cir. 2017)); *see*

20

21   _____
         [14] HDT does not appear to allege that Gennova's contacts are imputable to Emcure under
22   an alter ego theory.  (*See generally* Resp. at 5-15 (lacking any mention of alter ego).)  Therefore,
     the court construes both of its imputation arguments as operating under an agency theory.

ORDER - 18

1    *Daimler*, 571 U.S. at 135 n.13 ("Agency relationships, we have recognized, may be

2    relevant to the existence of specific jurisdiction. . . . As such, a corporation can

3    purposefully avail itself of a forum by directing its agents or distributors to take action

4    there."). However, the Ninth Circuit has stated that "[f]undamental tenets of agency

5    theory require that an agent 'act on the principal's behalf and subject to the principal's

6    control'" and, "under any standard for finding an agency relationship, the parent

7    company must have the right to substantially control its subsidiary's activities."

8    *Williams*, 851 F.3d at 1024-25 (quoting Restatement (Third) Of Agency § 1.01 (2006));

9    *see also Juniper Networks, Inc. v. Andrade*, No. 20-CV-02360-BLF, 2020 WL 5630023,

10   at *6 (N.D. Cal. Sept. 21, 2020) ("Under *Williams*, specific jurisdiction may be based on

11   an agent's contacts with the forum state only where the 'agent act[s] on the principal's

12   behalf and subject to the principal's control.'")

13          The parties dispute whether Dr. Singh and Gennova acted on behalf and at the

14   direction of Emcure during the relevant period; the nature of Dr. Singh's relationship

15   with Emcure, including whether he was an Emcure Director during the relevant period;

16   and whether Emcure has, and exercises, the right to control Gennova. (*Compare* Resp. at

17   2-3, 6-8, 6/22/22 Reed Decl. (Dkt. # 44) ¶¶ 5-6, 6/22/22 Khandhar Decl. ¶¶ 3-6, *and*

18   6/22/22 Berkowitz Decl. (Dkt. # 42) ¶¶ 10-12, 19, *with* MTD at 11-14, Reply at 1-2, 5-7,

19   Singh Decl. ¶¶ 7-9, 11-12, 14, 16-17, 19-20, 22-26,[15] 7/6/22 Mathur Decl. ¶¶ 4-7, *and*

20   5/13/22 Mathur Decl. ¶¶ 13-17, 19-21.) Based on the present record, the degree to which

21

22   _____

   [15] The court only considers the portions of paragraphs 9 and 11 that it has not stricken,
   *see supra* III.A.1-2.

1   Emcure has the "right to substantially control [Gennova's] activities" and to which

2   Gennova and Dr. Singh acted on behalf and subject to the control of Emcure is unclear.

3   Because the court's exercise of personal jurisdiction over Emcure under an agency theory

4   turns on the nature and extent of Emcure's relationship with Gennova and Dr. Singh, the

5   court is unable to sufficiently evaluate whether Dr. Singh and/or Gennova's contacts can

6   be imputed to Emcure at this time.

7        Turning to HDT's third argument, the parties dispute whether Emcure itself has

8   sufficient contacts with Washington and the United States[16] such that the court can

9   exercise personal jurisdiction over Emcure irrespective of any imputation of Dr. Singh

10  and Gennova's contacts.  (*See generally* MTD at 7-10; Resp. at 8-15; Reply at 3-9.)

11  Under the first prong of the minimum contacts test, HDT must establish that Emcure

12  either purposefully availed itself of the privilege of conducting activities in Washington

13  and the United States, or purposefully directed its activities toward Washington and the

14  United States.  Where, as here, the case sounds in tort, courts within the Ninth Circuit

15  "typically inquire whether a defendant 'purposefully direct[s] his activities' at the forum

16  state, applying an 'effects' test that focuses on the forum in which the defendant's actions

17  were felt."  *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d

18  1199, 1206 (9th Cir. 2006) (en banc) (quoting *Schwarzenegger*, 374 F.3d at 803).  Under

19  the effects test, a defendant has purposefully directed activities toward a forum state if

20

21        [16] As noted above, *see supra* at 17 n.12, the court looks to Emcure's contacts with the
    United States, rather than Washington, when analyzing personal jurisdiction under the federal
22  long-arm statute.

ORDER - 20

1    they have "(1) committed an intentional act, (2) expressly aimed at the forum state,

2    (3) causing harm that the defendant knows is likely to be suffered in the forum state."

3    *Axiom Foods*, 874 F.3d at 1069 (quoting *Calder v. Jones*, 465 U.S. 783 (1984)).

4    "Jurisdiction may be constitutionally maintained in such a scenario even if the defendant

5    never set foot in the forum state, if the defendant's contacts with the forum state are

6    out-of-state acts that had an effect in the forum."  *Burri*, 35 F.4th at 1213.

7           To establish purposeful direction under the effects test, HDT references, among

8    other things, (1) Emcure's CEO phone call to HDT's CEO "in Washington about

9    Gennova's termination of the License Agreement," during which Emcure allegedly

10   demanded that HDT "become the 'research arm of Gennova'" and that Emcure planned

11   to "claim HDT's vaccine as their own" (Resp. at 10 (first citing Compl. ¶ 85; and then

12   citing 6/22/22 Reed Decl. ¶ 7)); (2) the fact that Emcure "hosted regular meetings

13   between HDT in Washington and Dr. Singh's team in India over its U.S.-based Zoom

14   platform" (*id.* (first citing Compl. ¶ 69; and then citing 6/22/22 Khandhar Decl. ¶ 6));

15   (3) Emcure's alleged direct collaboration with U.S.-based suppliers (*id.* at 9, 2 (citing

16   6/22/22 Khandhar Decl. ¶ 5)); and (4) Emcure's alleged "intentional theft of Washington-

17   based trade secrets from a Washington-based company" (*id.* at 5, 9-13 (referencing

18   allegations in the complaint)).  Emcure contends that the allegations in Emcure's

19   complaint and declarations with respect to each of the activities listed above are wholly

20   insufficient to establish that Emcure has relevant contacts with Washington and the

21   United States or purposefully directed activities toward Washington.  (*See* Reply at 3-9;

22   *see also* Singh Decl. ¶¶ 17, 19-26; 5/13/22 Mathur Decl. ¶¶ 4-11, 17-21.)  On the record

1    before the court, the extent and nature of Emcure's relevant contacts with Washington

2    and the United States is unclear.  Accordingly, the court is unable to sufficiently evaluate

3    whether Emcure purposefully directed activities toward Washington and the United

4    States under the effects test.

5            A trial court has discretion to order discovery "to aid in determining whether it has

6    personal or subject matter jurisdiction."  *Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556

7    F.2d 406, 430 (9th Cir. 1977); *see also Laub v. U.S. Dep't of Interior*, 342 F.3d 1080,

8    1093 (9th Cir. 2003).  The district court should allow jurisdictional discovery when

9    "pertinent facts bearing on the question of jurisdiction are controverted or where a more

10   satisfactory showing of the facts is necessary," *Laub*, 342 F.3d at 1093, or "[f]urther

11   discovery on the issue might well demonstrate facts sufficient to constitute a basis for

12   jurisdiction," *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122,

13   1135 (9th Cir. 2003).  *See also Hayashi v. Red Wing Peat Corp.*, 396 F.2d 13, 14 (9th

14   Cir. 1968) (noting that, in the similar context of a Rule 12(b)(3) motion to dismiss for

15   improper venue, "the trial court may permit discovery on such a motion, and indeed

16   should do so where discovery may be useful in resolving issues of fact presented by the

17   motion, particularly since the necessity of resolving such issues is created by the movant

18   himself and the relevant evidence is peculiarly within the movant's possession").

19   Jurisdictional discovery need not be allowed, however, if it would amount merely to a

20   "fishing expedition."  *Johnson v. Mitchell*, No. CIV S-10-1968 GEB GGH PS, 2012 WL

21   1657643, *7 (E.D. Cal. May 10, 2012) (citation omitted).

22

As discussed above, the present record provides an insufficient basis for the court to determine whether it has personal jurisdiction over Emcure.  Accordingly, the court finds that it is in the parties and court's interest to conduct jurisdictional discovery before the court resolves Emcure's motion to dismiss.[17]  The court concludes that such discovery is warranted because, among other things, it "might well demonstrate facts sufficient to constitute a basis for jurisdiction" over Emcure.  *See Harris Rutsky*, 328 F.3d at 1135.  The court therefore DENIES Emcure's motion to dismiss without prejudice[18] and ORDERS the parties to engage in jurisdictional discovery until November 3, 2022.  Following the completion of jurisdictional discovery, Emcure may file a renewed motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) and (6) and under the doctrine of forum non conveniens, or alternatively to stay.

## IV.  CONCLUSION

For the foregoing reasons, the court DENIES Emcure's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) and (6) and under the doctrine of forum non conveniens, or alternatively to stay (Dkt. # 23) without prejudice to renewing the motion. The parties shall complete any jurisdictional discovery by November 3, 2022.  If

---

[17] Because the court orders jurisdictional discovery regarding Emcure's alleged agency relationships with Dr. Singh and Gennova and whether Emcure's own contacts satisfy the purposeful availment/purposeful direction step of the personal jurisdiction analysis outlined above, *supra* III.B.1, it does not address the parties' arguments regarding whether HDT's claims are sufficiently related to those contacts or whether an exercise of jurisdiction would be reasonable, under the second and third steps of the personal jurisdiction analysis.

[18] Because the personal jurisdiction issue may be dispositive of Emcure's entire motion and this case, the court does not address Emcure's remaining arguments in favor of dismissal or staying the case at this time.

1    necessary, HDT may file an amended complaint on or before November 11, 2022.  After

2    November 11, 2022, Emcure may file a renewed motion to dismiss pursuant to Federal

3    Rules of Civil Procedure 12(b)(2) and (6) and under the doctrine of forum non

4    conveniens, or alternatively to stay.

5            Dated this 29th day of July, 2022.

6

7                                         _____

8                                         JAMES L. ROBART
                                          United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

ORDER - 24