UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HDT BIO CORP., | CASE NO. C22-0334JLR |
| Plaintiff, | ORDER |
| v. | |
| EMCURE PHARMACEUTICALS, LTD., | |
| Defendant. | |

## I.   INTRODUCTION

Before the court are:  (1) Plaintiff HDT Bio. Corp.'s ("HDT") motion to compel discovery from Defendant Emcure Pharmaceuticals, Ltd. ("Emcure") (MTC (Dkt. # 59); MTC Reply (Dkt. # 76)), which Emcure opposes (MTC Resp. (Dkt. # 65)); (2) Emcure's motion for a protective order limiting the scope of jurisdictional discovery (JDMPO (Dkt. # 63); JDMPO Reply (Dkt. # 84)), which HDT opposes (JDMPO Resp. (Dkt. # 79)); and (3) Emcure's motion for a protective order shielding Emcure from obtaining Gennova

1   Biopharmaceutical, Ltd.'s ("Gennova") documents (GDMPO (Dkt. # 67); GDMPO

2   Reply (Dkt. # 83)), which HDT opposes (GDMPO Resp. (Dkt. # 81)).[1]  The court heard

3   oral argument from the parties regarding the three motions on November 9, 2022.  (*See*

4   11/9/22 Min. Entry (Dkt. # 85).)  The court has considered the parties' submissions, the

5   parties' oral arguments, the balance of the record, and the applicable law.  Being fully

6   advised, the court GRANTS IN PART HDT's motion to compel and DENIES Emcure's

7   motions for protective orders.

8   ## II.    BACKGROUND

9        This case arises from the alleged "theft of trade secrets" owned by HDT, a

10   Seattle-based biotechnology company, by Emcure, "one of India's largest manufacturers

11   and distributors of generic drugs."  (*See* Compl. (Dkt. # 1) ¶¶ 1-2, 5.)  The court detailed

12   the factual and procedural background of this case in its July 29, 2022 order and does not

13   repeat them here.  (*See* 7/29/22 Order (Dkt. # 51) at 2-5.)  Instead, the court discusses the

14   relevant procedural background before summarizing the parties' discovery-related

15   motions.

16   **A.    Procedural Background**

17        HDT sued Gennova's parent company, Emcure, alleging that it misappropriated

18   HDT's trade secrets in violation of the Defense of Trade Secrets Act ("DTSA"), 18

19   U.S.C. § 1836, and the Washington Uniform Trade Secrets Act ("WUTSA"), RCW

20   19.108.010, *et seq.*  (*See* Compl. ¶¶ 94-110.)  On May 13, 2020, Emcure moved to

21   

22   _____
      [1] When citing to the parties' pleadings, the court uses the pleadings' internal pagination
      unless otherwise stated.

1    dismiss the case, arguing that the court lacks personal jurisdiction over it; HDT has failed

2    to state a claim; and that dismissal is warranted under the doctrine of *forum non*

3    *conveniens*.  (*See generally* MTD (Dkt. # 23) at 6-19.)  Emcure alternatively requested

4    that the court stay this case pending the resolution of the ongoing arbitration between

5    HDT and Gennova in the London Court of International Arbitration ("LCIA").  (*See*

6    *generally id.* at 20.)  The court denied Emcure's motion without prejudice, finding that it

7    would be "in the parties' and court's interest to conduct jurisdictional discovery before

8    the court resolves Emcure's motion to dismiss."  (7/29/22 Order at 23.)  Accordingly, the

9    court ordered the parties to engage in jurisdictional discovery until November 3, 2022.

10   (*Id.*)  Pursuant to the parties' stipulation, the court subsequently extended the

11   jurisdictional discovery deadline to January 31, 2023.  (*See* 10/20/22 Order (Dkt. # 72);

12   Joint Stip. (Dkt. # 71).)

13       In August 2022, the parties submitted four questions related to jurisdictional

14   discovery to the court,[2] one of which asked whether Emcure must search for and produce

15   documents in the possession of its subsidiary, Gennova.  (8/13/22 Order (Dkt. #  53) at

16   1.)  The court concluded that "Emcure must search for and produce documents in the

17   possession of its subsidiary, Gennova," as "Emcure owns 87.95% of Gennova and the

18   conduct of Gennova is relevant, at least in part, to this case."  (*Id.* at 2 (citations omitted)

19   (first citing 5/31/22 Berkowitz Decl. (Dkt. # 30) ¶ 6; then citing Compl.; then citing

20   7/29/22 Order; and then citing *Soto v. City of Concord*, 162 F.R.D. 603, 619 (N.D. Cal.

21

22   _____

        [2] The parties did not provide briefing with respect to the four questions.  (*See generally* Dkt.)

1995)).)  However, the court noted that "[i]f Emcure believes that it lacks the legal right

to obtain documents from Gennova in response to a discovery request served by HDT, it

may raise that specific issue with the court."  (*Id.* (citing Fed. R. Civ. P. 26(c)).)  Shortly

thereafter, the court entered a protective order regarding the use of documents produced

in this case.  (*See* 9/9/22 Order (Dkt. # 56) (concluding that the court would enter

Emcure's proposed protective order); Protective Order (Dkt. # 57).)

**B.    HDT's Motion to Compel**

HDT propounded its first set of requests for production ("RFP") on Emcure on

June 13, 2022.  (10/6/22 Berkowitz Decl. (Dkt. # 60) ¶ 2, Ex. A ("RFP Set One").)  RFP

Set One included two requests for documents relating to the purchase of vaccine supplies,

including in the United States; one for Emcure's U.S. travel; and one for Dr. Sanjay

Singh's role at Emcure.  (*See id.* at RFP Nos. 10-11, 21-22.)  Emcure responded by,

among other things, promising to produce some documents, denying that others existed,

calling the requests overly broad, and, according to HDT, "rewriting HDT's remaining

requests and denying that documents responsive to those rewritten versions existed"

(MTC at 6).  (*See* 10/6/22 Berkowitz Decl. ¶ 29, Ex. T ("Resp. to RFP Set One") at RFP

Nos. 10-11, 21-22.)

HDT propounded a second set of RFPs on July 5, 2022.  (10/6/22 Berkowitz Decl.

¶ 2, Ex. B ("RFP Set Two").)  RFP Set Two sought, among other things, the documents

referenced in Vishal Mathur's declarations, which Emcure submitted in support of its

motions to dismiss and stay discovery.  (*See id.* at RFP Nos. 33-34; *see also* 5/13/22

Mathur Decl. (Dkt. # 24); 6/3/22 Mathur Decl. (Dkt. # 35).)  Emcure agreed to produce

1   the non-privileged, responsive documents at some unspecified, later date.  (*See* 10/6/22

2   Berkowitz Decl. ¶ 32, Ex. W ("Resp. to RFP Set Two") at RFP Nos. 33-34.)

3         HDT propounded a third set of RFPs on August 8, 2022.  (10/6/22 Berkowitz

4   Decl. ¶ 2, Ex. C ("RFP Set Three").)  RFP Set Three targeted communications between

5   Dr. Singh and Emcure CEO Dr. Satish Mehta relating to HDT or the vaccine, Gennova's

6   corporate documents, contracts between Emcure and Gennova, Emcure and Gennova's

7   organizational charts, and Dr. Singh's documents that mentioned both Emcure and HDT

8   or the vaccine.  (*See id.* at RFP Nos. 58-59, 63-64, 69-72.)  Emcure responded by, among

9   other things, agreeing to produce some documents, calling some of the requests overly

10  broad, and, according to HDT, "rewr[iting] the requests to make them very narrow" (*see*

11  MTC at 7).  (*See* 10/6/22 Berkowitz Decl. ¶ 48, Ex. AF ("Resp. to RFP Set Three") at

12  RFP Nos. 58-59, 63-64, 69-72.)

13        Despite Emcure's agreement to produce some documents responsive to RFP Nos.

14  10, 33-34, 58, 59, 64, and 71, it had not produced any documents in response to HDT's

15  discovery requests as of October 6, 2022.  (*See* 10/6/22 Berkowitz Decl. ¶ 3.)  Since

16  propounding its first set of RFPs, HDT repeatedly met and conferred with Emcure

17  regarding Emcure's delayed production, narrowing of HDT's RFPs, and objections to

18  production of Gennova's documents.  (*See, e.g.*, 10/6/22 Berkowitz Decl. ¶¶ 28-51

19  (attaching exhibits regarding the parties' discovery efforts).)  Over the months-long

20  period of meet and confer efforts, Emcure postponed or cancelled numerous meet and

21  confer calls, failed to respond to many of the issues raised in HDT's meet and confer

22  letters, and delayed in sending a response to a number of HDT's meet and confer letters.

ORDER - 5

1   (*See, e.g., id.*)  Although Emcure failed to ever confirm whether it maintains its

2   objections to all of HDT's RFPs during the parties' meet and confer efforts (*see, e.g., id.*;

3   *id.* ¶ 49, Ex. AG (September 15 letter from Emcure)), it confirmed near the end of

4   September 2022 that it maintains its objections regarding limiting the scope of

5   jurisdictional discovery to five subtopics and declining to produce any Gennova

6   documents (*see id.* ¶ 50, Ex. AH (September 26 letter from Emcure)).

7          As a result, on October 6, 2022, HDT filed a motion to compel Emcure to produce

8   documents responsive to HDT's RFP Nos. 10, 11, 21, 22, 33, 34, 58, 59, 63, 64, 69, 70,

9   71, and 72.  (*See* MTC at 2.)  It also asks the court to order Emcure to explain its search

10  methodology, and to award HDT its reasonable fees in bringing its motion to compel.

11  (*Id.*)  According to HDT, the documents responsive to the RFPs at issue "bear directly on

12  this [c]ourt's jurisdiction."  (*Id.* (stating that HDT knows that responsive documents exist

13  in light of its third-party discovery).[3])  The day after HDT filed its motion to compel,

14  Emcure finally produced its first batch of documents in response to HDT's RFPs.  (*See*

15  10/21/22 Berkowitz Decl. (Dkt. # 77) ¶¶ 2-3, Exs. A-B (noting that Emcure produced a

16  second batch of documents on October 17, 2022).)

17  //

18

19  _____

20  [3] In August 2022, HDT issued third-party subpoenas to numerous companies that "supply
    ingredients or equipment that could be used to manufacture the vaccine" at issue in this case.
    (*See* 10/6/22 Berkowitz Decl. ¶ 5.)  HDT received documents from the third-parties in response

21  to the following two requests:  (1) "All COMMUNICATIONS with or RELATING TO
    EMCURE from January 1, 2018 to the present"; and (2) "All DOCUMENTS reflecting or
    RELATING TO any actual or potential business transactions with EMCURE from January 1,

22  2018 to the present."  (*Id.* ¶ 6, Ex. D; *see id.* ¶¶ 7-26, Exs. E-R.)

1    **C.    Emcure's Motions for Protective Orders**

2         In response to HDT's motion to compel, Emcure filed motions for a protective

3    order limiting the scope of jurisdictional discovery and for a protective order shielding

4    Emcure from obtaining Gennova's documents.  (*See generally* JDMPO; GDMPO; MTC

5    Resp.)  Its motion for a protective order limiting the scope of jurisdictional discovery

6    asks the court to limit jurisdictional discovery to the following five topics:  "(1) Dr.

7    Singh's and Gennova's relationship with Emcure; (2) Satish Mehta's phone call with Dr.

8    Steven Reed; (3) Emcure's alleged direct collaboration with U.S. based suppliers; (4)

9    Emcure's alleged hosting of meetings between HDT and Gennova; and (5) Emcure's

10   alleged intentional theft of HDT's trade secrets by filing two patents in India."  (JDMPO

11   at 2.)  Emcure's second motion asks the court to enter an order "protecting Emcure from

12   the burden and expense (and practical challenge) of obtaining and producing documents

13   that are in the possession, custody, or control of Gennova."  (GDMPO at 1-2.)

14        The court held a hearing on the parties' three discovery motions on November 9,

15   2022, during which it indicated that this written order would follow.  (*See* 11/9/22 Min.

16   Entry.)

17                               **III.    ANALYSIS**

18        The court sets forth the relevant legal standard regarding obtaining discovery and

19   protective orders before considering Emcure's motions for protective orders.  It then

20   turns to address HDT's motion to compel discovery.

21   //

22   //

ORDER - 7

**A.      Legal Standard for Obtaining Discovery and Protective Orders**

Federal Rule of Civil Procedure 26 governs the standard for producing discovery. *See* Fed. R. Civ. P. 26.  In general, the scope of discovery is broad and

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).  For purposes of discovery, relevant information is that which is "reasonably calculated to lead to the discovery of admissible evidence." *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992); *see also* Fed. R. Civ. P. 26(b)(1) ("Information within this scope of discovery need not be admissible in evidence to be discoverable.").  The court has broad discretion in determining relevancy for discovery purposes. *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005).  The court must limit the scope of discovery otherwise allowable under the federal rules if it determines that (1) "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive"; (2) "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action"; or (3) "the proposed discovery is outside the scope permitted by Rule 26(b)(1)."  Fed. R. Civ. P. 26(b)(2)(C).

Under Federal Rule of Civil Procedure 37, "a party seeking discovery may move for an order compelling an answer, designation, production, or inspection."  Fed. R. Civ. P. 37(a)(3)(B).  The court may order a party to provide further responses to an "evasive

or incomplete disclosure, answer, or response." *See* Fed. R. Civ. P. 37(a)(4).  Although

the party seeking to compel discovery has the burden of establishing that its requests are

relevant, *see* Fed. R. Civ. P. 26(b)(1), "[t]he party who resists discovery has the burden to

show that discovery should not be allowed, and has the burden of clarifying, explaining,

and supporting its objections" with competent evidence, *see Doe v. Trump*, 329 F.R.D.

262, 270 (W.D. Wash. 2018) (quoting *Blemaster v. Sabo*, No. 2:16-CV-04557 JWS, 2017

WL 4843241, at *1 (D. Ariz. Oct. 25, 2017)).  The party resisting discovery on grounds

of privilege also bears the burden to show that the requested discovery is so protected.

*See Everest Indem. Ins. Co. v. QBE Ins. Corp.*, 980 F. Supp. 2d 1273, 1277 (W.D. Wash.

2013).

District courts have broad discretion to determine the scope of discovery, *Cabell v.

Zorro Prods., Inc.*, 294 F.R.D. 604, 607 (W.D. Wash. 2013), and a party can request that

a court limit the scope of discovery through the issuance of a protective order, Fed. R.

Civ. P. 26(c)(1).  Under Federal Rule of Civil Procedure 26(c)(1), the court "may, for

good cause, issue an order to protect a party or person from annoyance, embarrassment,

oppression, or undue burden or expense." *Id.*  On a motion for a protective order, the

party seeking to limit discovery has the burden of proving "good cause," which requires a

showing "that specific prejudice or harm will result" if the protective order is not granted.

*In re Roman Catholic Archbishop of Portland in Or.*, 661 F.3d 417, 424 (9th Cir. 2011).

Even if "good cause" exists, the court must balance the interests in allowing discovery

against the burdens to the parties or nonparties.  *Id.* at 425.

//

**B.**     **Emcure's Motion for a Protective Order Limiting the Scope of Jurisdictional Discovery**

Emcure asks the court to enter a protective order limiting the scope of jurisdictional discovery to the following five topics:  "(1) Dr. Singh's and Gennova's relationship with Emcure; (2) Satish Mehta's phone call with Dr. Steven Reed; (3) Emcure's alleged direct collaboration with U.S. based suppliers; (4) Emcure's alleged hosting of meetings between HDT and Gennova; and (5) Emcure's alleged intentional theft of HDT's trade secrets by filing two patents in India."  (JDMPO at 2 (claiming that these subtopics are "[c]onsistent with the [c]ourt's [o]rder" denying Emcure's motion to dismiss").)  It argues that the court should limit the scope of jurisdictional discovery to such topics because:  (1) "although HDT has proposed that jurisdictional discovery is 'not limited to finding support for facts already alleged by HDT, but rather to discovering facts that would constitute a basis for jurisdiction,' such unbounded discovery would contravene the fundamental principle that discovery should be tied to the well-pled (jurisdictional) allegations in the complaint"; (2) "discovery beyond Emcure's proposal would be disproportionate to the needs of the case, since it would reach tens of thousands of documents that, although irrelevant to jurisdiction, nevertheless would have to be reviewed at considerable expense in an exceptionally short period of time"; and (3) "allowing the expansive scope of 'jurisdictional' discovery that HDT proposes would eviscerate any distinction between merits and jurisdictional discovery, negating the plain

//

//

1  and unambiguous limitations set forth in the [c]ourt's August 13, 2022, [o]rder."[4]  (*Id.*

2  (arguing that the court should not allow "HDT to engage in a fishing expedition to

3  develop new theories of personal jurisdiction").)

4      HDT contends that it is "entitled to conduct discovery to support [its three]

5  theories [of jurisdiction], not just the individual facts alleged to support them," as limiting

6  discovery to the facts alleged in the complaint "would defeat the very purpose of the

7  exercise."[5]  (JDMPO Resp. at 9-10; *see also id.* at 10 ("[T]he Federal Rules do not

8  require plaintiffs to allege every jurisdictional fact that discovery might later

9  reveal. . . . Further, any more stringent standard would be unworkable because an

10  attorney is not permitted to plead a fact that she did not know or have reason to believe at

11  the time.").)  It also argues that its discovery requests are narrowly tailored to the

12  jurisdictional issues in dispute and cites to the results of its third-party discovery as

13  support for its position.  (*Id.* at 11 (stating that the documents it has received from third

14  parties regarding Emcure's contacts with the United States related to this dispute "are just

15  what Emcure repeatedly assured HDT and the [c]ourt did not exist, and which HDT's

16  discovery seeks to elicit" (citing 10/6/22 Berkowitz Decl. ¶¶ 9, 12-14, 17, Exs. F, H-K)).)

17  Finally, HDT asks the court to reject Emcure's contention that HDT's discovery requests

18

19      [4] The court's August 13, 2022 order answered the parties' four discovery related
    questions, one of which asked whether discovery at this stage is limited to jurisdictional
20  discovery.  (8/13/22 Order at 1.)  The court answered that question by stating that "discovery at
    this stage is limited to jurisdictional discovery."  (*Id.* at 2.)

21      [5] HDT also notes that Emcure's theory that discovery must be limited to the precise facts
    alleged in the complaint does not support its own subtopics because the complaint does not
22  allege two of the contacts that Emcure concedes HDT may conduct discovery into.  (*Id.*)

1    impose an "undue burden" because "Emcure's own arguments against jurisdiction have

2    put the documents that HDT seeks in issue." (*Id.* at 12.)

3           In its order denying Emcure's motion to dismiss, the court noted that HDT has

4    asserted three theories under which the court could exercise specific personal jurisdiction

5    over Emcure:  (1) imputation of Gennova's minimum contacts with Washington to

6    Emcure; (2) imputation of Dr. Singh's minimum contacts with Washington to Emcure;

7    and (3) independent of any imputation, Emcure itself made minimum contacts with

8    Washington and the United States.  (7/29/22 Order at 18; *see id.* at 19-22 (concluding

9    that, on the record before the court, "the nature and extent of Emcure's relationship with

10   Gennova and Dr. Singh" and "the extent and nature of Emcure's relevant contacts with

11   Washington and the United States"[6] were unclear).)  Limiting jurisdictional discovery to

12   the five subtopics in Emcure's motion would unreasonably restrict HDT's ability to

13   obtain discovery related to its three theories of jurisdiction and would potentially leave

14   the court in a position where it remains unclear whether it can exercise personal

15   jurisdiction over Emcure based on Emcure's relevant contacts with Washington and the

16   United States.[7]  Emcure provides no Ninth Circuit authority to support its position that

17

18          [6] While the court discussed Satish Mehta's phone call with Dr. Steven Reed, Emcure's
     alleged direct collaboration with U.S. based suppliers, Emcure's alleged hosting of meetings
19   between HDT and Gennova, and Emcure's alleged intentional theft of HDT's trade secrets in its
     order, it did not state that HDT was limited to exploring those contacts as a basis for jurisdiction
20   over Emcure.  (*See* 7/29/22 Order at 21-23.)  Rather, it merely referenced those contacts as
     examples of the facts that HDT cited to in an effort to establish purposeful direction under the
21   effects test.  (*See id.* at 21.)

22          [7] The parties' dispute essentially revolves around the limitations that Emcure's second
     through fifth subtopics would place on HDT's ability to discover information regarding

1    jurisdictional discovery must be limited to well-pleaded allegations in the complaint,

2    rather than the plaintiff's alleged theories of jurisdiction.  (*See generally* JDMPO (citing

3    only out of circuit district court cases to support its proposition); JDMPO Reply (same).)

4    In the absence of binding authority to the contrary, and in light of the facts of this case

5    and the court's prior ruling, court declines to limit jurisdictional discovery to the

6    jurisdictional allegations in the complaint.

7          Additionally, in its July 29, 2022 order, the court concluded that jurisdictional

8    discovery was "warranted because, among other things, it 'might well demonstrate facts

9    sufficient to constitute a basis for jurisdiction' over Emcure."  (7/29/22 Order at 23

10   (quoting *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135

11   (9th Cir. 2003)).)  In reaching such a conclusion, the court necessarily found that

12   jurisdictional discovery into facts supporting any of HDT's three theories of jurisdiction

13   would not be a fishing expedition and intended jurisdictional discovery to help the parties

14   to better develop the record with respect to HDT's three theories.  (*See id.* at 22-23.)

15   Accordingly, the court rejects Emcure's contention that its motion for a protective order

16   should be granted because discovery beyond its five proposed subtopics would be a

17   fishing expedition.

18         However, the court did not intend jurisdictional discovery to overlap with merits

19   discovery, nor did it intend jurisdictional discovery to be limitless.  Thus, although the

20   court DENIES Emcure's motion for a protective order limiting jurisdictional discovery to

21   _____

22   Emcure's contacts with Washington and the United States.  They appear to agree that the
     limitation imposed by subtopic one is reasonable.

1  five subtopics, it ORDERS that jurisdictional discovery shall be limited, in accordance

2  with the court's July 29, 2022 order, to (1) Dr. Singh and Gennova's relationship with

3  Emcure and (2) Emcure's case-related contacts with Washington and the United States.

4  *See Cabell v. Zorro Prods., Inc.*, 294 F.R.D. 604, 608 (W.D. Wash. 2013) (concluding

5  that, during jurisdictional discovery, the plaintiff must "constrain his inquiries to facts

6  that are relevant to establishing either general or specific jurisdiction according to" the

7  standards for establishing personal jurisdiction).  HDT must narrowly tailor its discovery

8  requests to facts that are relevant to establishing the above theories of personal

9  jurisdiction.  If Emcure would like to raise specific challenges to any of HDT's discovery

10  requests as beyond this scope,[8] it may do so in a subsequent motion, after first attempting

11  to resolve the issue with HDT.

12  **C.    Emcure's Motion for a Protective Order Shielding Emcure from Obtaining Gennova's Documents**

13

14         Although the court previously ordered Emcure to produce documents in

15  Gennova's possession, it invited Emcure to reraise the issue with the court if it "believes

16  that it lacks the legal right to obtain documents from Gennova in response to a discovery

17  request served by HDT."  (*See* 8/13/22 Order at 2 (answering the parties' questions

18  related to jurisdictional discovery).)  Emcure now asks the court to enter a protective

19  order shielding "Emcure from the burden and expense (and practical challenge) of

20

21  ───────────

[8] In its motion, Emcure states that "HDT has propounded 72 document requests—many of which go to the merits of the case or are not narrowly tailored to jurisdictional issues." (JDMPO at 6.)  However, the court is unable to assess whether any of HDT's requests are beyond the scope of jurisdictional discovery unless Emcure specifically identifies the RFPs that it views as problematic.

22

ORDER - 14

1    obtaining and producing documents that are in the possession, custody, or control of

2    Gennova." (GDMPO at 1-2.)  It argues that the court should grant its motion because:

3    (1) "Emcure does not have possession, custody, or control of Gennova's documents, nor

4    does it have the legal right to obtain Gennova's documents on demand"; and (2) HDT

5    could seek discovery directly from Gennova." (*Id.* at 2; *see also id.* at 3-8.)  Emcure has,

6    however, agreed to produce responsive Gennova documents that it already possesses, as

7    well as the limited documents that it allegedly has the right to obtain as a shareholder of

8    Gennova. (*See* GDMPO at 3 n.2; *id.* 5 n.3 (citing Sharadchandra Decl. (Dkt. # 69) ¶¶ 6-9

9    (discussing the types of documents shareholders may obtain under Indian law)).)

10          As a threshold point, the court rejects Emcure's argument that obtaining relevant

11   documents directly from Gennova through the Hague Convention is a "practical

12   alternative path to obtain Gennova's documents." (*See* GDMPO Reply at 3

13   (capitalization omitted); *see also* GDMPO at 7-8.)  HDT notes in its response that one of

14   the biggest bars to obtaining discovery directly from Gennova through the Hague

15   Convention's letters rogatory process is service of process. (GDMPO Resp. at 9.)

16   Because Emcure refuses to accept service of process on behalf of Gennova (10/26/22

17   GDMPO Berkowitz Decl. (Dkt. # 82) ¶¶ 5, 7), and because Gennova declined to accept

18   service of process through counsel (*id.* ¶ 26), HDT would have to serve Gennova through

19   the Hague Convention before it would be able to obtain discovery from Gennova.

20   (GDMPO Resp. at 9.)  As the court noted during the hearing on the instant motions, and

21   //

22   //

1   as many other courts have observed,[9] service under the Hague Convention process can

2   often take years.  The court agrees with HDT's contention that "[t]here is no good reason

3   to belabor and prolong jurisdictional discovery in this way."  (*Id.*)

4         The court now turns to Emcure's argument that it should be shielded from

5   producing Gennova's documents because it does not have possession, custody, or control

6   of Gennova's documents, as required by Federal Rule of Civil Procedure 34(a)(1).  A

7   party may request production of documents from another party if those documents are

8   within the party's "possession, custody, or control."  Fed. R. Civ. P. 34(a)(1).  The phrase

9   "possession, custody or control" is disjunctive and thus, a party who establishes any one

10   of the three prongs is entitled to production.  *Soto v. City of Concord*, 162 F.R.D. 603,

11   619 (N.D. Cal. 1995).  The party seeking production of the documents bears the burden

12   of proving that the documents are in the other party's possession, custody, or control.

13   *United States v. Int'l Union of Petroleum & Indus. Workers, AFL-CIO*, 870 F.2d 1450,

14   1452 (9th Cir. 1989).

15   //

16

17         [9] Numerous courts have recently considered alternative methods of service in India
    precisely because service under the Hague Convention there is uncertain and drawn-out.  *See,*

18   *e.g.*, *Amazon.com, Inc. v. Robojap Techs. LLC*, No. 2:20-cv-00694-MJP, 2021 WL 4893426
    (W.D. Wash. Oct. 20, 2021) (denying authorization for alternative service in India; per case
    docket, service initiated on September 22, 2021 incomplete as of October 26, 2022); *In re Zantac*

19   *(Ranitidine) Prod. Liab. Litig.*, No. 20-MD-2924, 2021 WL 1989928, at *2 (S.D. Fla. Apr. 1,
    2021) (authorizing alternative service where Plaintiffs began Hague Convention process in India

20   on September 14, 2020, had received no information from Central Authority as of April 1, 2021,
    and process agent "indicated that Plaintiffs should not expect service to be completed before the

21   December 20, 2021 deadline for completion of fact discovery"); *Genus Lifesciences Inc. v.*
    *Tapaysa Eng'g Works Pvt. Ltd.*, No. 20-CV-3865, 2021 WL 915662, at *1 (E.D. Pa. Mar. 10,

22   2021) (authorizing alternative service where Plaintiff began Hague Convention process in India
    on August 20, 2020 and, despite follow-up, had received no response from Central Authority).

1    "The term 'control' is broadly construed."  *Bryant v. Armstrong*, 285 F.R.D. 596,

2    603 (S.D. Cal. 2012), and includes documents that the responding party has "the legal

3    right to obtain . . . upon demand," *In re Citric Acid Litig.*, 191 F.3d 1090, 1107 (9th Cir.

4    1999) (quoting *Int'l Union*, 870 F.2d at 1452).  *See also Soto*, 162 F.R.D. at 619 ("A

5    party may be ordered to produce a document in the possession of a non-party entity if that

6    party has a legal right to obtain the document or has control over the entity who is in

7    possession of the document.").  If the responding party has control over the entity that has

8    possession of the document, the responding party has "control" of the document.  *Soto*,

9    162 F.R.D. at 619.  For example, a parent corporation is deemed to have control over

10   documents possessed by "a subsidiary that the parent corporation owns or wholly

11   controls." *Int'l Union*, 870 F.2d at 1452 (concluding that subpoenaed international union

12   did not have control over certain records of local unions because they were separate legal

13   entities and contract governing union relationship did not give international union the

14   right to obtain local union documents upon demand).

15       However, "[c]ontrol must be firmly placed in reality . . . not in an esoteric concept

16   such as 'inherent relationship.'"  *Id.* at 1453-54; *see In re Citric Acid Litig.*, 191 F.3d at

17   1108 (stating that "proof of theoretical control is insufficient").  "The determination of

18   control is often fact-specific.  Central to each case is the relationship between the party

19   and the person or entity having actual possession of the document."[10]  *Thomas v.*

20

21       [10] *See, e.g.*, *In re ATM Fee Antitrust Litig.*, 233 F.R.D. 542, 544-45 (N.D. Cal. 2005)
     (parent entity defendant ordered to produce documents/information in possession and custody of
22   non-party wholly owned subsidiaries as parent entity had legal control of documents/information
     and failed to support its claim of burden); *Philippe Charriol Int'l Ltd v. A'Lor Int'l Ltd.*, No.

*Hickman*, No. 1:06-cv-00215-AWI-SMS, 2007 WL 4302974, at *14 (E.D. Cal. Dec. 6, 2007).  "The requisite relationship is one where a party can order the person or entity in actual possession of the documents to release them."  *Id.*  Such a position of control is usually the result of a statute, contractual provision, affiliation, or employment.[11]  *Id.*; *see also Philippe Charriol*, 2016 WL 7634440, at *2-3 (concluding there was not sufficient control because there was no contract, statute, or other affiliation that gave one corporation control over a separate corporation's financial documents).  In determining whether a company has the legal right to obtain documents upon demand, district courts often consider the following factors:  (1) commonality of ownership; (2) exchange or intermingling of directors, officers, or employees; (3) exchange of documents between the corporations in the ordinary course of business; (4) benefit or involvement by the non-party corporation in the transaction; and (5) involvement of the non-party

---

13-CV-01257-BAS(JLB), 2016 WL 7634440, *2-3 (S.D. Cal. Mar. 10, 2016) (denying motion to compel party entity to produce non-party entity's documents because facts that party entity shared/leased office space and provided services to non-party entity, had in past obtained documents from non-party entity, and acted as management company for non-party entity were insufficient to establish control); *Flowrider Surf, Ltd v. Pacific Surf Designs, Inc.*, No. 15CV1879-BEN (BLM), 2016 WL 6522808, at *8-10 (S.D. Cal. Nov. 3, 2016) (denying plaintiff's motion to compel defendant corporation to produce documents maintained by non-party corporation; fact that defendant's CEO founded non-party corporation and that both companies shared same business address insufficient to establish the requisite control).

[11] Here, there does not appear to be a statute or contract that confers on Emcure the right to obtain all of Gennova's documents on demand.  (*See* Sharadchandra Decl. ¶¶ 6-9 (explaining that India's Companies Act only gives shareholders the right to obtain certain categories of documents upon request); *see generally* GDMPO; GDMPO Resp.)  However, the court also notes that India's Companies Act, Act. No. 18 of 2013, does not appear to "forbid controlling shareholders to obtain other documents from companies that they control," nor does it appear to "forbid a parent corporation to obtain other documents from its subsidiaries."  (Advani Decl. (Dkt. # 86) at ¶¶ 4-10.)

1  corporation in the litigation. *See K-fee Sys. GmbH v. Nespresso USA, Inc.*, No.

2  CV2103402GWAGRX, 2022 WL 2156036, at *2 (C.D. Cal. May 2, 2022).  Below, the

3  court considers whether these five factors weigh in favor of finding that Emcure has

4  control over Gennova's documents.

5       First, as to commonality of ownership, Emcure owns 87.95% of Gennova.  (*See*

6  5/31/22 Berkowitz Decl. (Dkt. # 30) ¶ 6.)  While courts commonly require a parent to

7  produce documents from a wholly owned subsidiary, *Int'l Union*, 870 F.2d at 1452, the

8  mere fact that a corporation owns some percentage of a subsidiary does not automatically

9  render the parent corporation in control of the subsidiary's documents.  Accordingly,

10  Emcure's large majority stake in Gennova is not dispositive, but does weigh in favor of a

11  finding of control.

12       Second, regarding the exchange or intermingling of directors, officers, or

13  employees, HDT has established that Emcure and Gennova share numerous directors,

14  officers, and employees.  At the Board of Directors level, four of Gennova's seven

15  directors are Emcure personnel.[12]  (10/26/22 GDMPO Berkowitz Decl. ¶¶ 8-10.)  HDT

16  also identifies three officers/employees that appear to overlap between Emcure and

17  Gennova (*see* 10/26/22 GDMPO Berkowitz Decl. ¶¶ 19-21, Exs. M-O) and points to

18  documents Emcure and third parties have produced that indicate that Gennova and

19  Emcure share a "finance team" and "tax department" (*see* 10/26/22 GDMPO Berkowitz

20  //

21

22       [12] Because the parties dispute whether Dr. Singh is affiliated with Emcure, he is not included in this count.

1  Decl. ¶¶ 16-17, Exs. J-K; 10/6/22 Berkowitz Decl. ¶¶ 8-26, Exs. F-R).[13]  Accordingly,

2  although the court also agrees with Emcure's contention that evidence of some overlap in

3  personnel is not dispositive (GDMPO Reply at 2), HDT's evidence indicating an

4  intermingling of directors, officers, and employees between Emcure and Gennova does

5  weigh slightly in favor of finding control.

6       Third, as to the exchange of documents between corporations in the ordinary

7  course of business, HDT argues that it has evidence showing that Gennova "regularly"

8  shared sensitive business information with Emcure.  (GDMPO Resp. at 5.)  As examples,

9  HDT points to the following:  "Emcure's annual reports contain detailed financial

10  information about Gennova" (10/26/22 GDMPO Berkowitz Decl. ¶ 12, Ex. G);

11  (2) "Emcure's website contains detailed technical information about Gennova's vaccine"

12  (*id.* ¶ 10, Ex. E); (3) "Emcure's Draft Red Herring Prospectus ['DRHP'] contains detailed

13  information about 'our mRNA vaccine platform,' which Emcure has represented refers to

14  Gennova's vaccine platform" (*id.* ¶ 13, Ex. H); (4) with respect to the DRHP, "Emcure

15  requested and received input from Dr. Singh, [Gennova's CEO,] keeping him busy for a

16  week" (*id.* ¶ 14, Ex. I); (5) "[a]t Dr. Singh's request, HDT also gave its own draft press

17  release about the vaccine to Emcure for its review, input, and approval," and Emcure

18  "duly provided comments" (*id.* ¶¶ 14-15, Ex. I); (6) emails "showing Gennova and

19  Emcure working together to arrange for payment, shipping, and delivery of supplies for

20

21      [13] During the November 9, 2022 hearing on the instant motions, counsel for Emcure

22  acknowledged that there are some "shared employees" between Gennova and Emcure with respect to certain departments.

1  HDT's vaccine" (10/6/22 Berkowitz Decl. ¶¶ 8-26, Exs. F-R); and (7) email chains

2  demonstrating that "Emcure personnel regularly request and receive documents and

3  information from their Gennova counterparts" (10/26/22 GDMPO Berkowitz Decl.

4  ¶¶ 17-18, Exs. K-L).  Emcure argues that "some free flow of information" and

5  "collaboration between or shared company departments" are common in

6  parent-subsidiary relationships and does not mean Emcure can "categorically demand all

7  of Gennova's documents."  (GDMPO Reply at 2.)  While the court agrees that the

8  exchange of documents between corporations in the ordinary course of business is not

9  dispositive, HDT's evidence of what appears to be regular document-sharing between

10  Emcure and Gennova does weigh slightly in favor of finding control.

11         Fourth, regarding the benefit or involvement by the non-party in the transaction at

12  issue, Emcure argues that Gennova's documents are not critical to HDT's case.

13  (GDMPO at 6.)  It contends that the "central dispute at this stage is whether Gennova and

14  Dr. Singh are the agents of Emcure, and documents bearing on that question would be

15  within Emcure's files—since it is Emcure's understanding and intent that matter for

16  purposes of determining whether Gennova and Dr. Singh were its agents."  (*Id.*)  HDT

17  disagrees, stating that whether it can win its case or establish that the court has personal

18  jurisdiction over Emcure without Gennova's documents "is irrelevant."  (*See* GDMPO

19  Resp. at 6.)  Because Emcure's "entire defense thus far" has been that any theft was

20  perpetrated by Gennova and not by Emcure, HDT argues that "[t]here can be no dispute

21  that Gennova benefited from and was involved in this transaction to the greatest extent

22  possible."  (*Id.* (first citing MTD at 2-3; and then citing Compl. ¶¶ 3-4, 10-15, 43-86).)

1   The court agrees.  On the present record, Emcure cannot reasonably dispute that Gennova

2   benefited from and was involved in the transaction underlying this dispute.  Accordingly,

3   this factor weighs strongly in favor of finding control.

4          Fifth, as to the involvement of the non-party in the litigation, Emcure argues that

5   Gennova is not involved in this litigation.  (GDMPO at 7.)  However, Emcure has already

6   introduced and relied on a declaration from Gennova's CEO, Dr. Singh, in support of its

7   motion to dismiss on jurisdictional grounds.  (*See* Singh Decl. (Dkt. # 47); MTD Reply

8   (Dkt. # 45); *see also* GDMPO at 7 (stating that Dr. Singh voluntarily provided this

9   declaration).)  Emcure further contends that Gennova's lack of involvement in this

10  lawsuit is "confirmed by the fact" that HDT is arbitrating separate claims against

11  Gennova.  (GDMPO at 7.)  The court, however, disagrees that HDT's pending arbitration

12  against Gennova "confirm[s]" Gennova's lack of involvement in this lawsuit.  While

13  HDT was required to arbitrate its claims against Gennova in light of its binding

14  arbitration agreement with Gennova (*see* 5/31/22 Berkowitz Decl. (Dkt. # 30) ¶ 11, Ex. G

15  (license agreement)), the mere fact that Gennova will not be a party to this lawsuit does

16  not mean that it will not be involved in it in some capacity.  Finally, although Emcure

17  also insists that it "does not intend to rely on Gennova's documents, witnesses, or

18  employees to support any defense it might assert on the merits" (GDMPO at 7), the court

19  is hesitant to fully credit such a statement.  As noted above, Gennova was significantly

20  involved in the underlying transaction, and thus, the court finds it likely that testimony

21  from Gennova's employees and/or documents from Gennova will be relevant to the

22  //

1   resolution of HDT's claims against Emcure.[14]  Balancing Emcure's assertion regarding

2   its reliance on Gennova's documents and employees against the likelihood that Gennova

3   will be involved in this litigation, the court concludes that this factor weighs slightly in

4   favor of finding control.

5        In sum, the five factors weigh in favor of finding that Emcure has sufficient

6   "control" over documents possessed by its subsidiary, Gennova.  Accordingly, the court

7   DENIES Emcure' motion for a protective order shielding Emcure from obtaining

8   Gennova's documents.

9   **D.   HDT's Motion to Compel Discovery**

10       HDT moves to compel Emcure to produce documents responsive to RFP Nos. 10,

11   11, 21, 22, 33, 34, 58, 59, 63, 64, 69, 70, 71, and 72.  (MTC at 2.)  It also asks the court to

12   order Emcure to explain its search methodology with respect to RFP No. 11, and to

13   award HDT its reasonable fees in bringing its motion to compel.  (*Id.*)  Before addressing

14   the parties' arguments with respect to HDT's motion to compel, the court admonishes the

15   parties as follows.  HDT has served a substantial number of discovery requests, many of

16   which are overly broad, on Emcure during jurisdictional discovery thus far.  The court

17   warns HDT to be more careful with respect to the number and scope of its discovery

18   requests going forward.  Additionally, based on the record before the court, Emcure's

19   conduct during jurisdictional discovery thus far, *see infra* Section III.D.4, has fallen

20

21       [14] Additionally, as Emcure has already relied on Dr. Singh's testimony once, the court is
     not convinced that it will refrain from relying on his testimony in the future.  (*See* GDMPO
22   Resp. at 6 ("Clearly, Emcure can secure Gennova's participation when it serves Emcure's
     interests.").)

1  below the acceptable standard of conduct in this district.  The court warns Emcure that

2  sanctions, up to and including entering an order of default, may be imposed if it continues

3  to engage in discovery in such a manner.  Sanctions are also possible against local and

4  *pro hac vice* counsel if such conduct continues.  The court trusts that it has made itself

5  clear.

6        Additionally, as a preliminary matter, the court addresses Emcure's argument that

7  HDT's motion to compel is "largely moot" because Emcure produced documents in

8  response to RFP Nos. 10, 11, 22, 33, 34, 58, 59, 63, 64, and 71 after HDT filed its motion

9  to compel and will "continue to make rolling productions."  (MTC Resp. at 2-3; *compare*

10  *id.*, *with* MTC Reply at 2-3.)  The court disagrees with Emcure and declines to deny

11  HDT's motion to compel as moot in light of Emcure's untimely, partial production.

12  Because Emcure still has document productions to make, and because the court has since

13  denied Emcure's motions for protective orders,[15] the court finds it appropriate to evaluate

14  HDT's motion to compel Emcure to respond to RFP Nos. 10, 11, 21, 22, 33, 34, 58, 59,

15  63, 64, 69, 70, 71, and 72 at this time.

16        Below, the court addresses the RFPs at issue before considering HDT's request for

17  the court to award HDT its reasonable expenses and fees associated with bringing its

18  motion to compel.

19  //

20  //

21

22      [15] Emcure's objections to many of the RFPs at issue were based on the arguments raised in its motions for protective orders.

1          1.  RFP Nos. 33, 34, and 71

2          As to RFP Nos. 33, 34, and 71, Emcure has agreed to produce all non-privileged

3   documents responsive to these RFPs.  (*See* Resp. to RFP Set Two at RFP Nos. 33-34;

4   Resp. to RFP Set Three at RFP No. 71.)  Accordingly, the court GRANTS HDT's motion

5   to compel as to these RFPs.  Emcure shall produce all responsive documents within 45

6   days of the date of this order.

7          2.  RFP Nos. 10, 21, 22, 58, 59, 63, 64, 69, 70, and 72

8          With respect to RFP Nos. 10, 21, 22, 58, 59, 63, 64, 69, 70, and 72, Emcure:

9   (1) agreed to produce only documents ranging from January 1, 2020, to January 1, 2022,

10  that relate to a COVID-19 mRNA vaccine in response to RFP No. 10 (Resp. to RFP Set

11  One at RFP No. 10); (2) declined to produce documents in response to RFP Nos. 21 and

12  22 after it rewrote HDT's requests and concluded that it did not have any documents that

13  would be responsive to the rewritten requests (*id.* at RFP Nos. 21-22); (3) declined to

14  produce documents in response to RFP Nos. 63, 69, 70, and 72 on the basis that the RFPs

15  request Gennova's document and such documents are not within Emcure's possession,

16  custody, or control, and indicated that it intended to move for a protective order shielding

17  it from having to obtain such documents (Resp. to RFP Set Three at RFP Nos. 63, 69-70,

18  72); (4) declined to produce documents in response to RFP No. 63, in part, because the

19  request is overly broad and unduly burdensome in light of the lack of temporal limitations

20  (*id.* at RFP No. 63); and (5) agreed to produce only documents ranging from July 1, 2019,

21  to January 1, 2022, that relate to the five subtopics proposed in Emcure's motion for a

22  protective order limiting the scope of jurisdictional discovery in response to RFP Nos. 58,

59, 64, 69, and 70 (*id.* at RFP Nos. 58-59, 64, 69-70).  Emcure also objected to RFP Nos. 10, 21, 22, 58, 59, 63, 64, 69, and 70 as, among other things, "overly broad in scope." (*See generally* Resp. to RFP Set One at RFP Nos. 10, 21, 22; Resp. to RFP Set Three at RFP Nos. 58, 59, 63, 64, 69, 70.)

Having denied both of Emcure's motions for protective orders, the court rejects Emcure's objections to RFP Nos. 21, 58, 59, 63, 64, 69, 70, and 72 based on the arguments raised in those motions.  As to the whether any of the RFPs are overly broad in scope, *see* Fed. R. Civ. P. 26(b)(1); (*see also* Resp. to RFP Set One at RFP Nos. 10, 21, 22 (objecting to the RFPs as overbroad); Resp. to RFP Set Three at RFP Nos. at 58, 59, 63, 64, 69, 70 (same)), the court finds RFP No. 72 to be sufficiently limited in time and subject matter such that responding to RFP No. 72 would not impose a disproportionate burden on Emcure.  Accordingly, the court GRANTS HDT's motion to compel Emcure to respond to RFP No. 72.  Emcure shall produce all responsive documents within 45 days of the date of this order.

However, with respect to RFP Nos. 10, 21, 22, 58, 59, 63, 64, 69, and 70, the court finds these RFPs to be overly broad in light of the lack of any meaningful temporal and, as to some of the RFPs, subject matter limitations.[16]  *See* Fed. R. Civ. P. 26(b)(1).  For

---

[16] While HDT previously attempted to meet and confer with Emcure to narrow the scope of many of the RFPs at issue in a mutually agreeable fashion, Emcure took the aggressive stance that the only permissible limitation was to cabin the RFPs to the five subtopics proposed in its motion for a protective order limiting the scope of jurisdictional discovery.  (*See generally* Berkowitz Decl. ¶¶ 28-51 (including the parties' meet and confer letters as exhibits).)  The court, however, is hopeful that the parties will be able to reach an agreement with respect to these RFPs in light of the court's rejection of the arguments raised in Emcure's motions for protective orders and the court's comments during the November 9, 2022 hearing.

1   example, RFP No. 58 requests "[a]ll COMMUNICATIONS between Dr. Sanjay Singh

2   and Dr. Satish Mehta RELATING TO HDT."  (Resp. to RFP Set Three at RFP No. 58.)

3   Such a request lacks sufficient temporal and subject matter limitations, and thus, is not

4   focused solely on obtaining facts that would establish that Dr. Singh acted on behalf and

5   subject to the control of Emcure in relation to the events at issue in this case.  As another

6   example, RFP No. 21 requests "[a]ll DOCUMENTS and COMMUNICATIONS

7   RELATING TO travel by any officer, director, manager, or employee of EMCURE or by

8   any person acting at EMCURE's direction to the United States of America between

9   January 2019 and the present."  (Resp. to RFP Set One at RFP No. 21.)  Although the

10  request has a sufficient temporal limitation, it is not limited as to subject matter, and thus,

11  is not focused solely on establishing facts regarding Emcure's case-related contacts with

12  the United States.

13          Accordingly, the court DENIES HDT's motion to compel responses to RFP Nos.

14  10, 21, 22, 58, 59, 63, 64, 69, and 70 as they are currently written due to the

15  disproportionate burden that responding to these requests without further limitation

16  would impose on Emcure.  *See* Fed. R. Civ. P. 26(b)(1).  The court ORDERS the parties

17  to meet and confer within 10 days of the date of this order regarding ways to narrow

18  these RFPs.  The court further ORDERS the parties to file, by no later than November 28,

19  2022, a joint statement regarding:  (1) whether the parties have reached an agreement as

20  to the narrowing of these RFPs; (2) the status of Emcure's production of responsive

21  documents; and (3) how long the parties anticipate it will take to complete the

22  outstanding discovery requests.  As the court noted during the November 9, 2022 hearing,

1    the parties should make good faith attempts to reach an agreement on how to narrow the

2    RFPs at issue.  If the parties are unable to reach an agreement on all or some of the RFPs,

3    the parties shall indicate the RFPs that remain in dispute and shall include separate

4    statements containing their own proposed, narrowed version of each of the RFPs still in

5    dispute.  Once the parties reach an agreement as to the narrowing of these RFPs, or once

6    the court determines the appropriate way to narrow these RFPs, Emcure shall begin its

7    production of responsive documents.

8         3.  RFP 11 and Request to Explain Search Methodology

9         RFP No. 11 requests

10        [a]ll DOCUMENTS and COMMUNICATIONS RELATING TO payment
          for the equipment, ingredients, personnel, buildings, supplies or other inputs
11        needed to manufacture any cationic nano-emulsion or any mRNA vaccine,
          including but not limited to all DOCUMENTS and COMMUNICATIONS
12        RELATING TO any payment by GENNOVA to EMCURE for such inputs.

13   (Resp. to RFP Set One at RFP No. 11.)  Emcure objected to the request as being, among

14   other things, "overly broad in scope" and noted that it "does not manufacture any mRNA

15   vaccines nor cationic nano emulsions therefore would have no idea what equipment,

16   ingredients, supplies, etc. are needed to manufacture them."  (*Id.*)  It concluded by

17   stating, "none in Emcure's possession, custody, or control."  (*Id.*)

18        HDT argues that responsive documents "exist despite Emcure's representations to

19   the contrary."  (MTC at 12.)  HDT states that documents it obtained through third-party

20   discovery "show Emcure's actual involvement in payment for inputs to the cationic

21   nano-emulsion LIONTM and the mRNA vaccine known as HDT301, HGCO19, and

22   Gemcovac-19."  (*Id.* (citing 10/6/22 Berkowitz Decl. ¶¶ 5-27).)  In light of Emcure's

1   "false" response, HDT asks the court to order Emcure to redo its search and submit an

2   affidavit explaining its search methodology.  (*Id.*)

3       Emcure contends that HDT's "request for 'discovery on discovery' is classic

4   overreach and unnecessary," and it notes that such a request should only be granted when

5   a party's response or production was insufficient or deficient.  (MTC Resp. at 5 (citing

6   *Jensen v. BMW of N. Am., LLC*, 328 F.R.D. 557, 566 (S.D. Cal. 2019)).)  According to

7   Emcure, its discovery process—which is being overseen "by a sophisticated and

8   reputable third-party discovery vendor, Berkley Research Group"—is not materially

9   deficient simply because there was a "a relatively benign oversight" as to 1 of 72

10  document requests.  (*Id.* at 6.)  Emcure further argues that HDT's request should be

11  denied because "many of the same documents HDT relies on to claim Emcure's response

12  to [RFP] No. 11 was inaccurate have already been produced by Emcure and any further,

13  relevant documents will be," and "requiring Emcure to redo its search efforts simply

14  because HDT did not receive that which it expected would be prohibitively expensive

15  and only delay these proceedings."  (*Id.* at 6-7.)

16      After reviewing the parties' submissions, the court agrees with HDT that Emcure's

17  response to RFP No. 11 was inaccurate and thus, deficient.  While Emcure does not

18  dispute that its response was inaccurate, it argues that its failure to produce responsive

19  documents was a "relatively benign oversight."  (MTC Resp. at 6.)  To the court,

20  however, Emcure's false response seems more akin to negligent or intentional

21  misconduct.  Additionally, Emcure offers no explanation for how such an "oversight"

22  //

1   occurred in its response to HDT's motion to compel.[17]  (*See generally id.*)  Finally, as

2   HDT notes, although HDT was able to disprove Emcure's response to RFP No. 11

3   through third-party discovery, HDT will likely be unable to do the same as to many of its

4   other RFPs given that Emcure alone will possess the relevant documents.  (*See* MTC

5   Reply at 5.)  Accordingly, the court agrees with HDT's contention that these

6   circumstances warrant heightened oversight of discovery.  *See, e.g.*, *Whitmire v. Perdue*

7   *Foods LLC*, Case No. C21-0469RAJ-DWC, 2022 WL 59720, at *3-5 (W.D. Wash. Jan.

8   6, 2022) (ordering plaintiff to redo her search and explain her methodology where

9   plaintiff implausibly represented that responsive documents did not exist without offering

10  an explanation regarding her search methods).

11          However, the court also agrees with Emcure's contention regarding the scope of

12  RFP No. 11 (*see* Resp. to RFP Set One at RFP No. 11) and finds this RFP to be overly

13  broad in light of the lack of any meaningful temporal and subject matter limitations.  *See*

14  Fed. R. Civ. P. 26(b)(1).  Without sufficient temporal and subject matter limitations, RFP

15  No. 11 is not focused solely on establishing facts regarding Emcure's case-related

16  contacts with the United States.

17          Accordingly, the court GRANTS IN PART HDT's motion to compel Emcure to

18  redo its search for documents responsive to RFP No. 11, produce any responsive

19  documents, and explain its search methodology.  The court GRANTS HDT's request for

20  Emcure to submit a declaration explaining its search methodology with request to RFP

21

22          [17] During the court's hearing regarding the instant motions, counsel for Emcure
    acknowledged that its response to RFP No. 11 was based on incomplete information.

1   No. 11.  But, due to the disproportionate burden that responding to RFP No. 11 without

2   further limitation would impose on Emcure, *see* Fed. R. Civ. P. 26(b)(1), the court

3   DENIES HDT's request for Emcure to redo its search for documents that are responsive

4   to RFP No. 11 as it is currently written.  Thus, the court ORDERS the parties to meet and

5   confer within 10 days of the date of this order regarding ways to narrow RFP No. 11.

6   The court further ORDERS the parties to file, by no later than November 28, 2022, a

7   joint statement regarding (1) whether the parties have reached an agreement as to the

8   narrowing of RFP No. 11 and (2) the status of Emcure's production of responsive

9   documents.  As the court noted during the November 9, 2022 hearing, the parties should

10  make good faith attempts to reach an agreement on how to narrow RFP No. 11.  If the

11  parties are unable to reach an agreement, the parties shall include separate statements

12  containing their own proposed, narrowed version of RFP No. 11.  Once the parties reach

13  an agreement as to the narrowing of RFP No. 11, or once the court determines the

14  appropriate way to narrow RFP No. 11, Emcure shall begin its production of responsive

15  documents and shall file with the court, at the same time it produces documents

16  responsive to the rewritten version of RFP No. 11, a declaration describing its search

17  methods in attempting to locate responsive documents.

18         4.   Request for Payment of Expenses Associated with Motion to Compel

19         The court now addresses HDT's request for payment of expenses associated with

20  bringing its motion to compel under Federal Rule of Civil Procedure 37.  (*See* MTC at 2,

21  13; MTC Reply at 5-6); Fed. R. Civ. P. 37(a)(5)(A).  Under Rule 37, if the court grants a

22  motion to compel or if the requested discovery was provided after the motion was filed,

1  "the court must, after giving an opportunity to be heard, require the party . . . whose

2  conduct necessitated the motion, the party or attorney advising that conduct, or both to

3  pay the movant's reasonable expenses incurred in making the motion, including

4  attorney's fees." *Id.*  The award is mandatory unless:  (1) the moving party filed the

5  motion before attempting in good faith to resolve the matter; (2) the opposing party's

6  non-disclosure was substantially justified; or (3) other circumstances make an award of

7  expenses unjust. *Id.*  Where the motion is granted in part and denied in part, the court

8  "may, after giving an opportunity to be heard, apportion the reasonable expenses for the

9  motion." Fed. R. Civ. P. 37(a)(5)(C).  The burden of establishing this substantial

10  justification or special circumstances rests on the party being sanctioned. *See Hyde &*

11  *Drath v. Baker*, 24 F.3d 1162, 1171 (9th Cir. 1994).  The rule's purpose is "to protect

12  courts and opposing parties from delaying or harassing tactics during the discovery

13  process." *Cunningham v. Hamilton Cnty.*, 527 U.S. 198, 208 (1999); *see also Marquis v.*

14  *Chrysler Corp.*, 577 F.2d 624, 642 (9th Cir. 1978) (noting that the presumption in favor

15  of such awards serves a "deterrent function by discouraging unnecessary involvement by

16  the court in discovery").

17       Emcure argues that awarding HDT its expenses and attorneys' fees would be

18  "unjust" because:  (1) Emcure was "substantially justified" in its positions relating to the

19  scope of jurisdictional discovery and the production of Gennova's documents; "HDT's

20  overreach and complications occasioned by international discovery" contributed, in part,

21  to the delay in document production; and (3) "HDT has not suffered any prejudice from

22  the delay." (*See* MTC Resp. at 7-9.)

1    HDT contends that "Emcure's explanations ring hollow." (MTC Reply at 5.) For

2    example, HDT notes that Emcure has acknowledged its obligation to produce certain

3    documents in response to HDT's RFPs for months, yet it took HDT filing the instant

4    motion to compel for Emcure to finally produce any documents. (*Id.* at 5-6 ("Emcure

5    was not 'substantially justified' in relying on objections to parts of some RFPs to

6    withhold all documents.").) HDT also argues that Emcure has not "engage[d] in good

7    faith" with HDT during this discovery process; rather, according to HDT, "Emcure has

8    made the whole process as burdensome as possible, then blamed HDT for its own

9    failures." (*Id.* at 6 & n.4 (providing examples); *see also id.* at 1 (discussing Emcure's

10   conduct throughout this discovery process).)

11          Having denied Emcure's motions for protective orders and granted HDT's motion

12   to compel in part, the court now concludes that Emcure's months-long failure to produce

13   even a single document in response to HDT's RFPs was not substantially justified. *See,*

14   *e.g.*, *Milgard Mfg., Inc. v. Liberty Mut. Ins. Co.*, No. C13-6024BHS, 2015 WL 1884069,

15   at *3 (W.D. Wash. Apr. 24, 2015) (awarding fees, even where the opposing party

16   produced some of the requested documents after the motion was filed, because an award

17   of fees would not be unjust and the opposing party's non-disclosure was not substantially

18   justified). HDT propounded the RFPs at issue in early June, July, and August 2022. (*See*

19   10/6/22 Berkowitz Decl. ¶ 2.) Emcure, however, did not produce a single document to

20   HDT until October 7, 2022, the day after HDT filed the instant motion to compel and less

21   than a month before jurisdictional discovery was originally set to close. (*See* 10/21/22

22   Berkowitz Decl. ¶¶ 2-3.) Even considering the complications of international discovery,

1    the court does not find sufficient justification for such dilatory conduct.  First, the court

2    rejects Emcure's attempt to blame HDT for the delays merely because of the number and

3    form of HDT's requests.  On the present record, it appears that HDT repeatedly offered to

4    meet and confer with Emcure regarding the narrowing of any RFPs that Emcure believed

5    to be beyond the scope of jurisdictional discovery, yet Emcure did not engage with HDT

6    in good faith.[18]

7           Second, while Emcure refused to produce documents in response to a number of

8    the RFPs at issue on the basis that jurisdictional discovery should be limited to five

9    subtopics (*see* Resp. to RFP Set Three at RFP Nos. 58-59, 64, 69-70; *see also* 10/6/22

10   Berkowitz Decl. ¶¶ 34-35), it did not move for a protective order limiting the scope of

11   jurisdictional discovery until over two months after it asserted such objections (*see*

12   *generally* Dkt.).  Third, although the court, on August 13, 2022, ordered Emcure to

13   "search for and produce documents in" Gennova's possession and invited Emcure to raise

14   the issue with the court if it "believes that it lacks the legal right to obtain documents

15   from Gennova in response to a discovery request served by HDT" (8/13/22 Order at 2),

16   Emcure did not file the motion for a protective order regarding Gennova's documents

17   //

18   //

19

20          [18] For example, Emcure refused, multiple times, to provide a date certain by which it
     would even begin to make its production.  (*See, e.g.*, 10/6/22 Berkowitz Decl. ¶¶ 30, 32, 37,
21   48-50, Exs. T, U, W, Y, Z, AF, AG, AH.)  Additionally, Emcure postponed or cancelled
     numerous meet and confer calls, failed to respond to many of the issues raised in HDT's meet
22   and confer letters, and delayed in sending a response to a number of HDT's meet and confer
     letters.  (*See, e.g.*, *id.* ¶¶ 28-51 (attaching exhibits regarding the parties' discovery efforts).)

1   until after HDT filed the instant motion to compel (*see generally* Dkt.).[19]  Emcure fails to

2   adequately justify these delays.

3          Accordingly, the court concludes that Emcure's failure to timely produce

4   documents in response to the RFPs at issue was not substantially justified and resulted in

5   unnecessary motion practice, and that the circumstances do not make an award of fees

6   unjust.  *See* Fed. R. Civ. P. 37(a)(5)(A), (C).  Nonetheless, the court is also cognizant that

7   HDT shares at least a portion of the blame, as a number of its RFPs at issue are

8   overbroad.  Therefore, the court GRANTS IN PART HDT's request for payment of

9   expenses associated with bringing its motion to compel.  Pursuant to Rule 37(a)(5),

10  Emcure must pay 60% of HDT's reasonable expenses incurred in bringing the instant

11  motion to compel, including attorney fees.  The court invites HDT to file a request for

12  payment of 60% of its expenses associated with the instant motion to compel within 14

13  days of the filing of this order.  HDT shall note its motion for fees, if any, in accordance

14  with the local rules.

### IV.    CONCLUSION

15

16         For the foregoing reasons, the court ORDERS as follows:

17         1.  HDT's motion to compel discovery is GRANTED IN PART.  Specifically,

18  //

19  //

20

21       [19] Emcure even alluded to its plans to file a motion for a protective order shielding it from obtaining Gennova's documents in its responses to a number of the RFPs at issue.  (*See* Resp. to

22  RFP Set Three at RFP Nos. 63, 72.)  Yet, it failed to do so until HDT filed the instant motion to compel.

1        a.  HDT's motion to compel Emcure to respond to RFP Nos. 33, 34, 71, and

2              72 is GRANTED.  Emcure shall produce all responsive documents to these

3              RFPs within 45 days of the date of this order.

4        b.  HDT's motion to compel Emcure to respond to RFP Nos. 10, 21, 22, 58,

5              59, 63, 64, 69, and 70 is DENIED.  The court ORDERS the parties to meet

6              and confer within 10 days of the date of this order regarding ways to

7              narrow these RFPs.  The court further ORDERS the parties to file, by no

8              later than November 28, 2022, a joint statement regarding:  (1) whether the

9              parties have reached an agreement as to the narrowing of these RFPs;

10             (2) the status of Emcure's production of responsive documents; and

11             (3) how long the parties anticipate it will take to complete the outstanding

12             discovery requests.  The parties should attempt to reach an agreement on

13             how to narrow the RFPs at issue.  If the parties are unable to reach an

14             agreement on all or some of the RFPs, the parties shall indicate the RFPs

15             that remain in dispute and shall include separate statements containing their

16             own proposed, narrowed version of each of the RFPs still in dispute.  Once

17             the parties reach an agreement as to the narrowing of these RFPs, or once

18             the court determines the appropriate way to narrow these RFPs, Emcure

19             shall begin its production of responsive documents.

20        c.  HDT's motion to compel Emcure to redo its search with respect to RFP No.

21             11, produce any responsive documents, and explain its search methodology

22             is GRANTED IN PART.  Specifically, the court GRANTS HDT's request

1   for Emcure to submit a declaration explaining its search methodology with

2   request to RFP No. 11 but DENIES HDT's request for Emcure to redo its

3   search for documents that are responsive to RFP No. 11 as it is currently

4   written.  The court ORDERS the parties to meet and confer within 10 days

5   of the date of this order regarding ways to narrow RFP No. 11.  The court

6   further ORDERS the parties to file, by no later than November 28, 2022, a

7   joint statement regarding (1) whether the parties have reached an agreement

8   as to the narrowing of RFP No. 11 and (2) the status of Emcure's

9   production of responsive documents.  The parties should attempt to reach

10  an agreement on how to narrow RFP No. 11.  If the parties are unable to

11  reach an agreement, the parties shall include separate statements containing

12  their own proposed, narrowed version of RFP No. 11.  Once the parties

13  reach an agreement as to the narrowing of RFP No. 11, or once the court

14  determines the appropriate way to narrow RFP No. 11, Emcure shall begin

15  its production of responsive documents and shall file with the court, at the

16  same time it produces documents responsive to the rewritten version of

17  RFP No. 11, a declaration describing its search methods in attempting to

18  locate responsive documents.

19  d.   HDT's request for payment of expenses associated with bringing its motion

20      to compel is GRANTED IN PART.  The court invites HDT to file a request

21      for payment of 60% of its expenses associated with the instant motion to

22

compel within 14 days of the filing of this order.  HDT shall note its motion

for fees, if any, in accordance with the local rules.

2. Emcure's motion for a protective order limiting the scope of jurisdictional

discovery is DENIED.

3. Emcure's motion for a protective order shielding Emcure from obtaining

Gennova's documents is DENIED.

Dated this 9th day of November, 2022.

JAMES L. ROBART
United States District Judge